2012 OK CR 3

**STATE of Oklahoma, Appellant,**

v.

**Cindy Ann Pope HOOLEY, Appellee.**

No. S–2010–1226.

Court of Criminal Appeals of Oklahoma.

Jan. 31, 2012.

David Prater, District Attorney, Matthew Johnson, Assistant District Attorney, Oklahoma City, OK, counsel for appellant in District Court.

Jeff Eulberg, Oklahoma City, OK, counsel for appellee in District Court.

David Prater, District Attorney, Matthew Johnson, Assistant District Attorney, Oklahoma City, OK, counsel for appellant on appeal.

Jeff Eulberg, Oklahoma City, OK, counsel for appellee on appeal.

### *OPINION*

LUMPKIN, Judge.

¶ 1 Appellee Cindy Ann Pope Hooley was charged in the District Court of Oklahoma County on March 23, 2010, with Driving Under the Influence (47 O.S.2001, § 11–902(A)), Case No. CM–2010–893. Subsequently, her driver's license was revoked by the Department of Public Safety (DPS). She appealed that revocation to the District Court, Case No. CV–2010–1010. The District Court ruled in part that Appellee had been seized and that her seizure was unconstitutional.

¶ 2 On November 29, 2010, Appellee filed a motion to suppress in the misdemeanor DUI case. At a hearing before the Honorable Geary L. Walke, Special Judge, Appellee argued that as the District Court had ruled in her driver's license revocation appeal that her stop and seizure were unconstitutional, the doctrine of collateral estoppel applied and precluded the District Attorney's Office from re-litigating the issue in the criminal misdemeanor case. The District Attorney responded by stipulating that the issue heard in the DPS hearing was identical to the issue Appellee sought to preclude the District Attorney's Office from raising in the misdemeanor proceeding and that the issue was finally adjudicated on its merits at the DPS hearing. However, the District Attorney also argued that the District Attorney's Office and DPS were not the same parties for purposes of collateral estoppel and that the District Attorney's Office did not have a full and fair hearing on the issue to be precluded. The trial court granted the motion to suppress finding that the doctrine of collateral estoppel applied and the District Attorney's Office was therefore precluded from re-litigating the constitutionality of Appellee's seizure. The District Attorney announced his intention to appeal. It is from this order of the District Court precluding the Oklahoma County District Attorney's Office from arguing the constitutionality of Appellee's seizure that the State now appeals.

¶ 3 The State appeals under the authority of 22 O.S.Supp.2009, § 1053(5) asserting that the suppressed evidence forms a substantial part of the proof of the pending misdemeanor charge and that the prosecution cannot proceed if the Motion to Suppress is upheld. Therefore, argues the State, appellate review of the matter is in the best interests of justice.

¶ 4 In appeals brought to this Court pursuant to 22 O.S.Supp.2009, § 1053, this Court reviews the trial court's decision to determine if the trial court abused its discretion. *State v. Love*, 1998 OK CR 32, ¶ 2, 960 P.2d 368, 369. *See also State v. Pope*, 2009 OK CR 9, ¶ 4, 204 P.3d 1285, 1287. An abuse of discretion has been defined as a conclusion or judgment that is clearly against the logic

and effect of the facts presented. *Love*, 1998 OK CR 32, ¶ 2, 960 P.2d at 369. *See also Slaughter v. State*, 1997 OK CR 78, ¶ 19, 950 P.2d 839, 848–849.

¶ 5 In its sole proposition of error, the State argues the trial court erred in granting the motion to suppress. In the first part of a three part argument, the State backs away from its stipulations made at the motion to suppress hearing and argues the issue in the Department of Public Safety (hereinafter DPS) hearing was not identical to the issue in the criminal proceeding and that the issue was not finally adjudicated in the license revocation appeal. The State asserts this Court should adopt U.S. Supreme Court precedent which applies a two part test to determine when a civil proceeding triggers the Double Jeopardy clause and that Appellee's license revocation was not a form of criminal punishment that would trigger the Double Jeopardy Clause. Therefore, according to the State, the order granting the motion to suppress should be reversed and the case remanded for further proceedings.

¶ 6 Alternatively, the State argues that DPS and the District Attorney's Office are not the same party or in privity and that the District Attorney's office did not have a full and fair opportunity to litigate the issue at the hearing on the license revocation appeal.

¶ 7 The Appellee responds that the District Court correctly applied the doctrine of collateral estoppel. Appellee argues that the trial court did not bar the District Attorney's Office from proceeding against her, but merely found that the very narrow issue of the constitutionally of her seizure had already been specifically decided in the appeal of the driver's license revocation. Further, Appellee asserts that DPS and the District Attorney's Office are the same party and in privity as the real party in interest is the State of Oklahoma and the State had a full and fair opportunity to litigate the issue at the license revocation appeal.

¶ 8 This Court addressed the doctrine of collateral estoppel in *Smith v. State*, 2002 OK CR 2, 46 P.3d 136, where we stated in pertinent part:

The doctrine of collateral estoppel stands for the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 442, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) This rule of law is applicable to criminal proceedings and is embodied in the Fifth Amendment guarantee against double jeopardy. *Ashe*, 397 U.S. at 445–446, 90 S.Ct. at 1195.

. . .

To apply collateral estoppel, the following elements must be established: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1022 (10th Cir.2001), *cert. denied*, 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001).

2002 OK CR 2, ¶¶ 7–9, 46 P.3d at 137–138 (footnotes omitted).

¶ 9 Subsequently, in *Smith v. Dinwiddie*, 510 F.3d 1180, 1183 (10th Cir.2007), the Tenth Circuit Court of Appeals stated in part:

The Fifth Amendment's Double Jeopardy Clause prevents the government from trying the same person twice for the same offense. The Clause embodies two broad principles: protection against a second prosecution for the same offense (whether after acquittal or conviction) and protection from multiple punishments for the same crime. *See Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Relatedly, collateral estoppel prevents a party from relitigating an issue that has already been decided. Although better known as a civil law concept, collateral estoppel also applies in criminal cases. *See, e.g., United States v. Oppenheimer*, 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161 (1916). In the criminal context, the doctrine of collateral estoppel serves to: (1) reduce chances of wrongful conviction after an acquittal, (2) strengthen notions of finality, (3) preserve judicial resources, and (4) restrain overzealous prosecutors. *See* Note, *The Due Process Roots of Criminal Collateral Estoppel*, 109 Harv. L.Rev. 1729, 1732 (1996).

The Supreme Court has clearly established that the doctrine of collateral estoppel applies in state criminal cases via the Fifth and Fourteenth Amendments. The doctrine is embodied in the Fifth Amendment's Double Jeopardy Clause, which has been incorporated against the states via the Fourteenth Amendment. *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) . . . Thus, state courts are constitutionally required to apply principles of collateral estoppel in criminal cases if and only if the protections of the Double Jeopardy Clause have been triggered.

. . .

Collateral estoppel bars the adjudication of a particular claim in a subsequent proceeding when four elements are met. Those elements are: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *E.g., Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1022 (10th Cir.2001).

Interpreting the Supreme Court's relevant constitutional precedents, then, the doctrine of collateral estoppel applies in state criminal proceedings only if the Double Jeopardy Clause is triggered by an earlier proceeding. For an issue to be barred from relitigation under the doctrine, the petitioner must show the four elements of the collateral estoppel test have been satisfied.

510 F.3d at 1186–1188 (footnotes omitted).[1] *See also Jackson v. State*, 2006 OK CR 45, ¶ 16, 146 P.3d 1149, 1157, fn. 5 ("[t]he doctrine of collateral estoppel precludes the relitigation of an ultimate issue by a party or his privies when the issue has been determined by a valid and final judgment," citing *Smith v. State*, 2002 OK CR 2, ¶ 7, 46 P.3d 136, 137).

¶ 10 In light of the stipulations made at the motion to suppress hearing, we first turn our attention to the second portion of the test to determine the applicability of the collateral estoppel doctrine—whether the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and whether the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. The applicability of this portion of the collateral estoppel test is an issue of first impression for this Court.

¶ 11 In situations similar to the present case other jurisdictions are split on whether different state agencies are the same party or in privity for purposes of collateral estoppel.[2] In *Elliott v. State*, 2011 WY 32, 247 P.3d 501, using the same test used in *Smith* for determining the applicability of the collateral estoppel doctrine, the Wyoming Supreme Court found that no privity existed between the Wyoming Department of Transportation (WYDOT) and the county and district attorneys.[3] The Court stated in part:

> We disagree with Elliot's argument that privity exists here because the relationship between the governmental agencies in this case is similar to that addressed in *State v.*

*Eleven Thousand Three Hundred Forty–Six Dollars & No Cents in United States Currency*, 777 P.2d 65 (Wyo.1989). There, this Court found privity to exist because the deputy county attorney who handled the criminal prosecution was appointed as a special assistant attorney general to initiate and conduct the subsequent forfeiture hearing. Here, we disagree that privity similarly exists between WYDOT and the offices of the county and district attorneys involved.

> "Privity is not established ... from the mere fact that persons may happen to be interested in the same question or in proving or disproving the same state of facts." 47 Am.Jur.2d, *Judgments* § 589. Here, WYDOT is only granted the authority to suspend a driver's license after an arrest and to thereafter defend that suspension in an administrative context ... On the other hand, the county and district attorneys are responsible for prosecuting, investigating, and representing the State of Wyoming in all *criminal* matters ... No privity exists between WYDOT and the county and district attorneys.

> Moving on to the fourth and final element of collateral estoppel, the full and fair opportunity to litigate, we are persuaded that county and district attorneys, because of the nature of their offices, are denied a full and fair opportunity to litigate any issue in an administrative hearing. Although we have not formally held that collateral estoppel does not prevent the State from litigating issues at a criminal trial that were previously decided in an administrative setting, we see the point of doing so

---

**1.** In *Smith v. State*, this Court affirmed the appellant's conviction for sexual abuse of a minor child finding that collateral estoppel did not bar Smith's criminal prosecution despite a jury's rejection of the state's allegations in an earlier civil deprived child action that he had abused a child in a manner that was shocking and heinous or which caused serve harm or injury. 2002 OK CR 2, ¶ 10, 46 P.3d at 138. Smith subsequently petitioned for habeas corpus relief. The federal district court denied his petition, finding that our decision was not contrary to, or an unreasonable application of, clearly established federal law. Smith appealed that decision to the Tenth Circuit Court of Appeals. That court ultimately agreed with the lower court and affirmed the denial of the application for a writ of habeas corpus. *See*

*Smith v. Dinwiddie*, 510 F.3d 1180, 1190 (10th Cir.2007).

**2.** The cases discussed herein reflect only a representative sampling of the cases addressing the issue and are not meant to be a complete list.

**3.** In *Elliott*, the appellant argued the state was collaterally estopped from pursuing a misdemeanor DUI prosecution against him because the Office of Administrative Hearings (OAH), in proceedings contesting a Wyoming Department of Transportation (WYDOT) driver's license suspension, found that the arresting officer lacked probable cause to arrest him for driving under the influence.

due to the differing purposes and policies behind the two types of proceedings. When applying collateral estoppel to an issue raised in a civil action, which issue was previously litigated in a criminal action, we have said that criminal proceedings present a defendant with a full and fair opportunity to litigate the issues because a criminal defendant has strong incentives to defend vigorously the charges against him....

2011 WY 32, ¶¶ 8–9, 247 P.3d at 504 (internal citations omitted, emphasis in original).

¶ 12 In *State v. Brabson*, 976 S.W.2d 182 (Tex.Crim.App.1998), the Texas Court of Criminal Appeals held that the Dallas County District Attorney was not collaterally estopped from litigating the issue of probable cause for the appellee's arrest at the suppression hearing in the criminal prosecution.[4] The Court reasoned:

> The first question we address is whether the parties in the administrative proceeding and the criminal prosecution are the same. The party that sought to revoke appellee's driver's license in the administrative proceeding was the Texas Department of Public Safety. See Article 6701 /-5, Section 2(f). The Texas Department of Public Safety and the Dallas County District Attorney are not the same parties. Therefore, collateral estoppel principles do not preclude the Dallas County District Attorney from litigating the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution.
>
> In addition, assuming the Texas Department of Public Safety and the Dallas County District Attorney are the same parties called the "State," we would still have to decide whether the issue of probable cause for appellee's arrest was "properly before" the administrative agency and whether the "State" had an "adequate opportunity" to litigate the issue.... The law applicable to appellee's case ... does not authorize the administrative judge to make findings on

the issue of probable cause for an arrest nor does it put the "State" on notice that this issue may be litigated at the administrative hearing. This is important for collateral estoppel purposes because the question of whether probable cause existed that appellee operated a motor vehicle while intoxicated is a different question from whether probable cause existed for his arrest.... The ultimate issues to be resolved in the administrative proceeding and in the motion to suppress hearing in the criminal prosecution are not the same.

> Therefore, it cannot be said the issue of probable cause for appellee's arrest was "properly before" the administrative judge or that the "State" had an "adequate opportunity" to litigate that issue at the administrative proceeding ... Based on the foregoing, the administrative judge's finding of no probable cause for appellee's arrest does not preclude the "State" from litigating that issue in the criminal proceeding.

976 S.W.2d at 184–185 (internal citations and footnotes omitted).

¶ 13 However, in *State v. Summers*, 351 N.C. 620, 623–626, 528 S.E.2d 17, 20–21 (N.C. 2000) the North Carolina Supreme Court found that the district attorney, representing the State in the defendant's criminal prosecution for DWI, was in privity with the Attorney General, representing the State in defendant's appeal to civil superior court from his license revocation as both offices represented the interests of the people of North Carolina, "regardless of whether it be the district attorney in a criminal trial court or the Attorney General in a civil or criminal appeal." 351 N.C. at 624, 528 S.E.2d at 21. The court further said:

> It is the common interest in protecting the citizens of North Carolina from drunk drivers which supports a finding of privity between the Attorney General and a district attorney in judicial actions involving the determination of whether there was a

4. In *Brabson,* the appellate court had to decide whether the Dallas County District Attorney was collaterally estopped from litigating at a motion to suppress hearing in a criminal prosecution the issue of probable cause for the appellee's arrest

when the Texas Department of Public Safety had received an adverse ruling on that issue in a prior administrative proceeding to revoke the appellee's driver's license.

willful refusal to submit to an Intoxilyzer test. Accordingly, as in *Lewis*, we conclude the State's interest was fully represented in the civil action and, therefore, the privity element of collateral estoppel was met.

351 N.C. at 624, 528 S.E.2d at 21.

¶ 14 In *Briggs v. State, Dept. of Public Safety, Div. of Motor Vehicles*, 732 P.2d 1078 (Alaska 1987) the Alaska Supreme Court found the Department of Public Safety and the prosecutor were in privity stating, "[t]he general rule is that litigation by one agency is binding on other agencies of the same government, but exceptions may be warranted if there are important differences in the authority of the respective agencies." 732 P.2d at 1082.[5] The Alaska Court further stated:

> The test for determining whether the government is collaterally estopped in subsequent litigation has been stated as "whether or not in the earlier litigation the representative of the [government] had authority to represent its interests in a final adjudication *of the issue in controversy*." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403, 60 S.Ct. 907, 917, 84 L.Ed. 1263, 1276 (1940) (emphasis added).
>
> The suppression issue decided by the district court was fully litigated by the prosecution at the suppression hearing. The interests of the Department of Public Safety in litigating this issue were thus adequately represented. We therefore conclude that all the requirements for collateral estoppel have been met, and the state is therefore barred from relitigating the suppression issue.

732 P.2d at 1082–83 (emphasis in original, footnote omitted).

■ ¶ 15 The above decisions on the issue of privity are based in part on applicable state statutory and case law which is not necessarily the same as in Oklahoma. Further, in some of the cases the license revocation proceedings are purely administrative. In Oklahoma, the revocation of a driver's license is an administrative proceeding. However, a DPS order of revocation can be appealed to the District Court. 47 O.S.2001, § 6–211(a). At that point, it becomes a judicial proceeding. *Oklahoma Dept. of Public Safety v. Robinson*, 1973 OK 80, ¶ 15, 512 P.2d 128, 131. Despite these differences, we find this foreign case law instructive, and as in several cases cited above, initially look to our state statutes to determine whether the Department of Public Safety and the District Attorney's Office are the same party or in privity.

¶ 16 The Department of Public Safety and the Office of the District Attorney were created by separate and distinct statutes. The Department of Public Safety was created by section 2–101 of Title 47 and is under the control and supervision of the Commissioner of Public Safety. "The Commissioner shall have such powers and authority as may be granted by the provisions of the Uniform Vehicle Code or as may otherwise be provided by law." *Id.*

¶ 17 Under 47 O.S.Supp.2009, § 6–101(M), DPS is authorized to promulgate rules for the issuance and renewal of driver's licenses. Under § 6–120, DPS is granted the authority to cancel, deny or disqualify driver's licenses or driving privileges. Section 2–121 creates the Legal Division with the stated purpose to represent DPS in "administrative hearing and other legal actions and proceedings."

¶ 18 Under 47 O.S.Supp.2009, § 6–205, DPS has the authority to revoke an individual's driver's license. That revocation may be appealed to the District Court under 47 O.S.Supp.2009, § 6–211. The State of Oklahoma is represented by the Department of Public Safety at all stages of a license revocation proceeding. At the revocation hearing, "[t]he court shall take testimony and examine the facts and circumstances, including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of the person, and determine from the facts, circum-

---

5. In *Briggs*, breathalyzer test results were suppressed on due process grounds in a criminal DWI prosecution which was ultimately dismissed. In a subsequent administrative review of his license revocation, the breathalyzer test results were admitted and the license revocation was affirmed.

stances, and records **whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department.**" 47 O.S.Supp. 2009, § 6–211(I) (emphasis added).

¶ 19 The Office of the District Attorney was created by section 215.1 of Title 19. The duties of the office are set forth in 19 O.S. 2001, § 215.4 as follows:

The district attorney, assistant district attorneys, or special assistant district attorneys authorized by subsection C of Section 215.37M of this title, shall appear in all trial courts and **prosecute all actions for crime committed in the district,** whether the venue is changed or not; the district attorney or assistant district attorneys shall prosecute or defend in all courts, state and federal, in any county in this state, all civil actions or proceedings in which any county in the district is interested, or a party unless representation for the county is provided pursuant to subsection A of Section 215.37M of this title; and the district attorney or assistant district attorneys shall assist the grand jury, if required, pursuant to Section 215.13 of this title. The district attorney may at all times request the assistance of district attorneys, assistant district attorneys, district attorney investigators from other districts, or any attorney employed by the District Attorneys Council who then may appear and assist in **the prosecution of actions for crime or assist in investigation of crime in like manner as assistants or investigators in the district.**

(emphasis added).

¶ 20 Under this statutory language, DPS and the Office of the District Attorney are not the same party for purposes of the collateral estoppel doctrine. They are distinct state agencies with differing functions. Further, they are not in privity for collateral estoppel purposes.[6] DPS is only granted authority over the driving privileges of the citizens of this state and its responsibility is to enforce driver's licensing requirements within the state. On the other hand, the District Attorney's Office is responsible for prosecuting, investigating, and representing the State of Oklahoma in all criminal matters.

¶ 21 This is not to say that DPS and the District Attorney's Office might not be considered the same party in certain situations. In *Brabson,* the Texas Court of Criminal Appeals acknowledged that in "some instances, for instance discovery issues, law enforcement agencies and district attorneys could be considered the same parties for the analysis of claims falling within *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." 976 S.W.2d at 184–185, fn. 4. However, discovery issues present a far different situation from the determination in the present case as to whether DPS and the District Attorney's Office are in privity for purposes of Fourth Amendment issues. As the Brabson Court said:

This is because the underlying principle of *Brady* is the "avoidance of an unfair trial to the accused." See *Thomas,* 841 S.W.2d at 402. One of the underlying principles of the common-law doctrine of collateral estoppel is that a party should have an opportunity to litigate an issue of ultimate fact. Here, the Dallas County District Attorney had no opportunity to litigate the issue of probable cause for appellee's ar-

---

**6.** In addition to the definition of "in privity" given in the above cited cases we also consider the definition set forth *Webster's* which states in pertinent part:

   2. *Law.* a. A relation between parties held to be sufficiently close and direct to uphold a legal claim on behalf of or against another party with whom this relation exists. B. A successive or mutual interest in or relationship to the same property.

*Webster's II, New Riverside University Dictionary,* pg. 937. *See also Restatement (Second) of Judgments,* § 36 cmt. *f* (1982) which defines privity as follows:

*f. Government agencies having distinct responsibilities.*
In some circumstances, a prior determination that is binding on one agency and its officials may not be binding on another agency and its officials ... If the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them, the earlier judgment should not be given preclusive effect in the second action.

rest in the administrative proceeding to revoke appellee's driver's license. It cannot be said that permitting the Dallas County District Attorney to litigate the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution results in an "unfair trial to the accused."

976 S.W.2d at 184–85, fn. 4.

¶ 22 As addressed below, the District Attorney's Office in the present case did not have the opportunity to litigate the constitutionality of Appellee's seizure in the license revocation appeal proceedings.

¶ 23 The focus of the hearing in the driver's license revocation appeal was on the issue of licensing requirements, not criminal prosecution. The ultimate issues to be resolved in a driver's license revocation appeal and a criminal prosecution are not the same. In *Price v. Reed*, 1986 OK 43, 725 P.2d 1254, the Oklahoma Supreme Court said that a driver's license revocation hearing assesses a person's continued fitness and eligibility for a driver's license while a criminal trial exacts a personal penalty from a convicted defendant in the form of a fine or incarceration. 1986 OK 43, ¶ 9, 725 P.2d at 1259. Finding that a driver's license revocation hearing is not the equivalent of a criminal trial, the Oklahoma Supreme Court explained:

> Revocation of a driver's license is part of a *civil/regulatory scheme* that serves a governmental purpose vastly different from criminal punishment. The state's interest here is to foster safety by temporarily removing from public thoroughfares those licensees who have exhibited dangerous or erratic behavior. Because a civil revocation proceeding is distinct from criminal law enforcement, the double jeopardy clause cannot be implicated. One's claim to a driver's license is indeed a protectible

property interest that may not be terminated without due process guaranteed by the Fourteenth Amendment. In an appeal from a driver's license revocation order the focus is hence not on the double jeopardy clause but rather on the due process standards that are built into the regulatory scheme and were applied in the proceedings below.

1986 OK 43, ¶ 11, 725 P.2d at 1259–60 (emphasis in original, footnotes omitted).[7]

■ ¶ 24 Further, the burdens of proof are different in a driver's license revocation proceeding and a criminal prosecution. In an appeal of the driver's license revocation, on judicial review of an order of the Department of Public Safety revoking a driver's license the preponderance of the evidence test is to be applied. *Price v. Reed*, 1986 OK 43, ¶ 7, 725 P.2d at 1260; *Smith v. State ex rel. Dept. of Public Safety*, 1984 OK 16, ¶ 5, 680 P.2d 365, 367–368 (citing *Application of Baggett*, 1974 OK 95, ¶ 14, 531 P.2d 1011, 1019). In a criminal prosecution, it is the State's burden to prove guilt beyond a reasonable doubt. 22 O.S.2001, § 836; *Johnson v. State*, 2004 OK CR 23, ¶ 11, 93 P.3d 41, 45; *Taylor v. State*, 90 Okl.Cr. 169, 212 P.2d 164, 170 (1949).

¶ 25 The import of the differing burdens of proof was noted by the Alaska Supreme Court in *Briggs* where the court acknowledged situations where the differing interests of the prosecutor and the administrative agency justify a refusal to apply collateral estoppel. 732 P.2d at 1083, fn. 9. The court distinguished *Briggs* from those cases as the same burden of proof was used in both the criminal case and the license revocation proceeding. *Id.*

¶ 26 The difference in the purpose and the relative burdens of proof in criminal prosecu-

---

7. *Price v. Reed* involved a challenge to the constitutionality of the implied consent law, 47 O.S.Supp.1982, § 754. Price was arrested and charged with being in actual, physical control of a motor vehicle while under the influence of alcohol. He voluntarily submitted to a breath test. Its results showed that he had a blood-alcohol content of 0.18. Price then received notice his driver's license would be suspended for ninety days. After Price had been acquitted of the charge in municipal court, the Commis-

sioner of the Department of Public Safety [Department] revoked his driver's license for a period of three months. Following an administrative hearing held at Price's request the revocation order was sustained. Price appealed that order to the District Court where the DPS revocation order was set aside and § 754 ruled unconstitutional. The case was appealed to the Oklahoma Supreme Court who reversed the trial court's reinstatement of Price's driver's license.

tions and driver's license revocation proceedings makes the bar of collateral estoppel inapplicable in this case. *See Price,* 1986 OK 43, ¶ 7, 725 P.2d at 1258. *See also Marquardt v. Webb,* 1976 OK 8, ¶ 17, 545 P.2d 769, 772 (*citing Robertson v. State ex rel. Lester,* 1972 OK 126, 501 P.2d 1099 acquittal of a defendant on criminal DUI charge is not a bar to the suspension of the driver's license as such finding has no bearing on the civil proceedings revoking a driver's license under the Implied Consent statutes).

¶ 27 Further, while DPS lawyers represented the State at the license revocation appeal hearing, the District Attorney's Office had no part in the hearing. The ruling made at the license revocation appeal hearing should not be used against the District Attorney's Office who was not entitled to appear at the hearing. Contrary to the trial judge's comments at the motion to suppress hearing, this situation involves much more than different lawyers making different arguments. The Fourth Amendment issues addressed by prosecutors in a criminal case are much different from any challenge to the legality of a traffic stop in a license revocation proceeding.

¶ 28 Having thoroughly considered the arguments raised by both parties and the applicable law, we find the doctrine of collateral estoppel is not applicable to this case and the principles do not preclude the Oklahoma County District Attorney's Office from litigating the issue of probable cause for Appellee's arrest at the suppression hearing in the criminal prosecution. Although both entities are state agencies, DPS and the District Attorney's Office are not the same party or in privity in this case, and the District Attor-

ney's Office did not have a full and fair opportunity to be heard on the issue at the hearing on the appeal of the license revocation.

¶ 29 Having determined that the last two parts of the collateral estoppel test have not been satisfied, it is not necessary to address the first two parts. We find the trial court abused its discretion in applying the collateral estoppel doctrine to preclude the District Attorney's Office from litigating the constitutionality of Appellee's seizure. Therefore, the order of the District Court sustaining the motion to suppress is reversed and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

## DECISION

¶ 30 The ruling of the District Court granting the motion to suppress is **REVERSED** and the case is **REMANDED** to the District Court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011), the MANDATE is ORDERED issued upon delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J., C. JOHNSON, J., and SMITH, J.: concur.