THOMPSON v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:THOMPSON v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 THOMPSON v. STATE
2019 OK CR 3
Case Number: F-2017-727
Decided: 02/28/2019
R. JAY THOMPSON, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2019 OK CR 3, __ __

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant R. Jay Thompson appeals his Judgment and Sentence from the District Court of Pontotoc County, Case No. CF-2015-37, for one count of Kidnapping (Count 1) in violation of 21 O.S.Supp.2012, § 741, one count of Forcible Sodomy (Count 2) in violation of 21 O.S.2011, § 888, two counts of First Degree Rape (Counts 3 & 4) in violation of 21 O.S.2011, §§ 1114 & 1115, one count of Aggravated Assault and Battery (Count 5) in violation of 21 O.S.2011, §§ 646 & 647, and one count of Pattern of Criminal Offenses (Count 6) in violation of 21 O.S.2011, § 425, each after former conviction of three felonies.[1] The Honorable C. Steven Kessinger, District Judge, presided over Thompson's jury trial and sentenced him, in accordance with the jury's verdict, to 20 years imprisonment on each of Counts 1 and 2 and to life imprisonment on each of Counts 3, 4, 5, and 6 with credit for time served.[2] Judge Kessinger imposed costs and fees and ordered the sentences on each count to run consecutively to each other and consecutive to Thompson's sentence in CF-2014-579.

¶2 Thompson raises three issues:

(1) whether his constitutional right to confrontation was violated by the admission of A.T.'s statements to the sexual assault nurse examiner (SANE);

(2) whether his constitutional right to confrontation was violated by the admission of A.T.'s statements to her grandmother; and

(3) whether the district court erred in admitting A.T.'s statements to her grandmother under the hearsay exception for excited utterances.

¶3 We find relief is not required and affirm the Judgment and Sentence of the district court.

Facts

¶4 A.T. lived with her grandmother, Charlsie Wilson, in Ada, Oklahoma in January 2015. The two watched television together on January 8, 2015, and A.T. appeared fine and had no visible injuries. A.T. received a telephone call and went outside, but quickly came back inside for some unknown reason. She then went back outside, but this time she did not return. Nor did she take her purse or cell phone like she normally did when she left the house. A.T. telephoned her grandmother the next morning; she returned home later that day. When A.T. came inside, she immediately locked the door behind her. She pressed her back against the door and slid down the door to her feet. She had visible injuries, including a black eye and many scratches and scrape-type injuries. She was crying and screaming and appeared under a great deal of stress. She told her grandmother that Appellant Thompson abducted her and would not let her go. She said he took her to Seminole and raped her inside his vehicle and then took her to his camper trailer near Coalgate and raped her two more times. According to A.T., he beat her, held a knife to her throat, and threatened to kill her if she told anyone. Wilson took A.T. to the hospital for medical treatment for her injuries and a sexual assault examination.

¶5 The medical staff admitted A.T. to the emergency room and focused on managing her pain, postponing the sexual assault exam until the next morning (January 10th) because of A.T.'s discomfort. The exam performed by the Sexual Assault Nurse Examiner (SANE) served to treat A.T.'s injuries and to begin the investigation into her rape allegations. The SANE nurse documented A.T.'s narrative that included naming Thompson as her rapist and a detailed account of the alleged crimes he perpetrated against her. The SANE nurse noted in the examination that A.T. had bruises on her face, neck, arms and buttocks. A.T. also had numerous abrasion-type injuries. She told the SANE nurse that Thompson raped her three times, penetrated her anus with his fingers, forced his penis into her mouth, punched her in the face and chest, and strangled her. A.T.'s physical injuries were consistent with her narrative account and included a fractured eye socket, bruising on her neck indicative of strangulation, and discoloration of her vaginal wall and anal area indicating injury.

¶6 Law enforcement arrested Thompson and executed search warrants on his vehicle, cell phone and his camper trailer. Thompson also voluntarily participated in two videotaped police interviews. He claimed that he and A.T. had been in a dating relationship for a few months and that the sex between them was consensual.[3] He denied causing any of her injuries; he claimed that some of the injuries occurred when A.T. got into a brief skirmish with some unknown woman and that the others were self-inflicted by A.T. hitting herself in the face because she wanted drugs. His accounts in the two interviews contained several inconsistencies. Police retrieved a text message from A.T. to Thompson sent on January 8, 2015, telling him that she loved him but was not in love with him. This text provided a possible motive for Thompson's assault on A.T.

¶7 A.T. delivered her cell phone to a detective with the Ada Police Department on January 15, 2015. She was visibly distraught. Within an hour of leaving the police station, A.T. was unconscious in a hotel room from an apparent methamphetamine overdose. She never regained consciousness and was in a vegetative state for nearly a year. She died on January 11, 2016.

1. Confrontation Clause and Statements 
A.T. Made to SANE Nurse

¶8 The question in this case is whether the Sixth Amendment's Confrontation Clause prohibited the prosecution from introducing A.T.'s statements to the SANE nurse because A.T. was unavailable and Thompson never had an opportunity to cross-examine her. Without this testimonial hearsay evidence, Thompson contends that the State's evidence was insufficient for conviction. Defense counsel objected to the introduction of this evidence on constitutional grounds, preserving this claim of error for review on appeal. See Pullen v. State, 2016 OK CR 18, ¶ 10, 387 P.3d 922, 927. We review a district court's constitutional ruling on the Confrontation Clause as a question of law without any deference to the district court's ruling. Tryon v. State, 2018 OK CR 20, ¶ 38, 423 P.3d 617, 632; Hanson v. State, 2009 OK CR 13, ¶ 8, 206 P.3d 1020, 1025.

¶9 The district court found that A.T.'s statements to the SANE nurse were non-testimonial and were provided for the primary purpose of medical diagnosis and treatment, making the statements admissible under the medical treatment hearsay exception at 12 O.S.2011, § 2803(4). The district court noted in its ruling that the challenged testimony satisfied the two-pronged test for admission under Section 2803(4) previously adopted by this Court. Kennedy v. State, 1992 OK CR 67, ¶ 11, 839 P.2d 667, 670 (holding in deciding whether proffered hearsay statements were reasonably pertinent to diagnosis or treatment, courts should consider (1) was the declarant's apparent motive consistent with receiving medical care; and (2) was it reasonable for the physician to rely on the information in diagnosis or treatment).

¶10 The Confrontation Clause guarantees an accused the right to confront the witnesses against him. U.S. Const. amend VI. In Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the Supreme Court held the Sixth Amendment prohibits the introduction of testimonial statements by a non-testifying witness, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. Post Crawford, the Court "labored to flesh out what it means for a statement to be 'testimonial.'" Ohio v. Clark, ___U.S.___, 135 S.Ct. 2173, 2179, 192 L.Ed.2d 306 (2015). Under current Confrontation Clause jurisprudence, however, admissibility of A.T.'s out-of-court statements to the SANE nurse hinges on whether the statements were testimonial under what is known as the "primary purpose" test. See id.; Whorton v. Bockting, 549 U.S. 406, 420, 127 S.Ct. 1173, 1183, 167 L.Ed.2d 1 (2007)(the Confrontation Clause has no application to out-of-court non-testimonial statements under Crawford). A reviewing court must determine whether, in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to create an out-of-court substitute for trial testimony. Clark, 135 S.Ct. at 2180. Admission of an out-of-court statement does not violate the Confrontation Clause unless its primary purpose was testimonial. Id.

¶11 SANE nurses perform both a medical and investigatory function in almost every interaction with an alleged sexual assault victim. These nurses are specially trained and carry out the dual role of providing medical treatment to alleged victims of sexual assault and collecting evidence for possible use in a criminal prosecution. It is the duality of the SANE nurse's role that calls into question the primary purpose of the sexual assault examination.

¶12 This Court has yet to decide in a published case whether out-of-court statements made by an alleged sexual assault victim to a SANE nurse describing the assault are admissible at trial where the declarant/alleged victim is unavailable to testify.[4] Other courts considering the issue are divided. Many courts have found a victim's statements made to medical personnel, including sexual assault examiners, describing the attack and naming the perpetrator were non-testimonial because the primary purpose of the exam was for medical treatment. E.g. Ward v. State, 50 N.E.3d 752, 760-64 (Ind. 2016);[5] United States v. Chaco, 801 F.Supp.2d 1200, 1213 (D.N.M. 2011); State v. Miller, 264 P.3d 461, 490 (Kan. 2011); State v. Harper, 770 N.W.2d 316, 322-23 (Iowa 2009); People v. Garland, 777 N.W.2d 732, 737-38 (Mich.App.1 2009); State v. Slater, 939 A.2d 1105, 1117-19 (Conn. 2008); State v. Krasky, 736 N.W.2d 636, 640-42 (Minn. 2007); State v. Stahl, 855 N.E.2d 834, 838-46 (Ohio 2006); People v. Vigil, 127 P.3d 916, 921-26 (Colo. 2006); Commonwealth v. DeOliveira, 849 N.E.2d 218, 225-26 (Mass. 2006); Hobgood v. State, 926 So.2d 847, 852 (Miss. 2006); State v. Vaught, 682 N.W.2d 284, 290-93 (Neb. 2004). Other courts, however, have found that a victim's statements to a sexual assault examiner were testimonial based upon evidence of the examiner's relationship with police or involvement of the police in the exam process and the absence of any need for, or provision of, medical treatment during the exam. Hartsfield v. Commonwealth, 277 S.W.3d 239, 244-45 (Ky. 2009); People v. Vargas, 100 Cal.Rptr.3d 578, 588-89 (Cal.Ct.App. 2009); State v. Romero, 156 P.3d 694, 698-99 (N.M. 2007); State v. Cannon, 254 S.W.3d 287, 304-06 (Tenn. 2008); United States v. Gardinier, 65 M.J. 60, 65-66 (C.A.A.F. 2007); Medina v. Nevada, 143 P.3d 471, 476 (Nev. 2006).

¶13 For this case, we must decide whether, considering all circumstances viewed objectively, the "primary purpose" of A.T.'s statements to the SANE nurse was to create an out-of-court substitute for trial testimony based on the SANE nurse's investigatory role or whether the primary purpose of the statements was for the provision of medical treatment based on the SANE nurse's role as a medical professional. Courts considering the issue have focused on various factors that are relevant to the primary purpose determination, including inter alia: 1) the objective intent of the SANE nurse and the alleged victim; 2) the classification of the SANE nurse as either a medical professional or a law enforcement agent; 3) the setting of the exam; 4) whether the alleged victim's statement contained specific accusations; 5) the amount of time that elapsed between the exam and the assault; 6) whether the SANE nurse participated in the medical treatment of the victim; 7) whether a law enforcement officer was present; 8) the primacy of medical purpose; and 9) the intention underlying the victim's answers.

¶14 The SANE nurse in this case testified the primary purpose of the medical portion of any sexual assault exam is to treat the patient medically and the purpose of the medical forensic exam is to collect evidence. She explained that she first obtains consent to conduct the sexual assault exam and goes over the exam process with the patient. Once consent is given, she begins the exam by getting the patient's medical history and vital signs. She also performs a full nursing assessment. As part of the exam, she asks the patient what happened and offers any needed prophylactic medicines. She said that she treats each patient the same way and collects evidence regardless of whether or not the patient wants to make a report to law enforcement. She further explained the importance of the patient's answers about the sexual assault because those answers help identify the location of injuries and assist in developing the nursing diagnosis and assessing the need for referrals and prophylactic medication as well as evaluating the patient's pain level. She maintained that the purpose of the answers is for medical diagnosis and treatment.

¶15 The SANE nurse described in detail A.T.'s sexual assault exam. She followed protocol and first obtained A.T.'s consent and then her narrative in the emergency room. She conducted the actual exam in the "sexual assault room." She described A.T.'s visible injuries and demeanor. She went through A.T.'s narrative of what happened and specifically explained the importance of A.T.'s statements for treatment purposes about hair pulling, oral sodomy, arm twisting, blows to her head and chest, strangulation, and vaginal and anal penetration because of the risk of injury and disease associated with those actions. She also explained the areas she photographed and swabbed for evidence collection, but reiterated that the primary purpose of the sexual assault exam was to provide medical treatment.

¶16 When the relevant circumstances are considered, the balance tips in favor of finding that A.T.'s statements--that Thompson raped her, penetrated her anus with his fingers, forced his penis into her mouth, punched her in the face and chest and strangled her--were made for the primary purpose of medical treatment rather than creating evidence for Thompson's prosecution. The exam was performed in the emergency room once A.T.'s pain was under control. Although the SANE nurse was not involved in A.T.'s initial medical treatment and stabilization, a portion of the exam was devoted to treating the issues associated with the assault including disease and prophylaxis. Law enforcement was not involved in the exam. In fact, A.T. provided inconsistent answers on the consent form concerning whether she gave permission to report the event to law enforcement. The SANE nurse was a medical professional whose exam involved evidence collection as a secondary purpose. The primacy of the exam that she described was for medical treatment. Based on this record, we find that despite the existence of an investigative component, the sexual assault exam served the primary purpose of furnishing medical care, making A.T.'s statements about the attack--including the identification of her attacker--admissible under the medical-diagnosis hearsay exception, and non-testimonial for purposes of the Confrontation Clause.[6] Therefore, introduction of A.T.'s statements at trial did not violate Thompson's right to confrontation. For these reasons, the district court did not err in admitting A.T.'s hearsay statements to the SANE nurse under the medical treatment hearsay exception. 12 O.S.2011, § 2803(4).

2. Confrontation Clause and 
Statements A.T. made to her grandmother

¶17 The much simpler question is whether the Sixth Amendment's Confrontation Clause prohibited the prosecution from introducing A.T.'s statements to her grandmother because A.T. was unavailable and Thompson never had an opportunity to cross-examine her. Without this hearsay evidence, Thompson contends again that the State's evidence was insufficient for conviction. The district court overruled defense counsel's evidentiary and constitutional objections to the evidence and found that A.T.'s statements to her grandmother were non-testimonial and admissible under the hearsay exception for excited utterances. 12 O.S.2011, § 2803(2). This issue has been preserved for appellate review. See Pullen, 2016 OK CR 18¶ 10, 387 P.3d at 927. Our review of the district court's ruling is again de novo. Tryon, 2018 OK CR 20¶ 38, 423 P.3d at 632; Hanson, 2009 OK CR 13¶ 8, 206 P.3d at 1025.

¶18 This claim likewise hinges on whether A.T.'s statements were testimonial under the "primary purpose" test. We must decide whether, in light of all the circumstances, viewed objectively, the "primary purpose" of A.T.'s conversation with her grandmother was to create an out-of-court substitute for trial testimony. Clark, 135 S.Ct. at 2180. A.T.'s statements were obviously not testimonial. The statements were not made in any sort of formal capacity, and an objective witness would not have reasonably believed that such statements would be used for later prosecution. Tryon, 2018 OK CR 20¶¶ 41-42, 423 P.3d at 633. The content and circumstances of the statements show that A.T., distraught from her ordeal with Thompson, immediately informed her grandmother during an informal conversation about the physical and sexual abuse he inflicted on her. There is nothing in the record that remotely suggests the primary purpose of the conversation was to create an out-of-court substitute for trial testimony, making the statements non-testimonial for purposes of the Confrontation Clause. Hence, introduction of A.T.'s statements to her grandmother did not violate Thompson's right to confrontation. This claim is denied.

3. Excited Utterance

¶19 Thompson argues the district court erred in admitting the hearsay statements A.T. made to her grandmother under the hearsay exception for excited utterances. The statements, Thompson claims, were too remote in time to the alleged startling events to exclude the possibility of fabrication. The district court overruled defense counsel's evidentiary hearsay objection to the evidence and found that A.T.'s statements to her grandmother fit within the excited utterance hearsay exception. 12 O.S.2011, § 2803(2). This issue has been preserved for appellate review and we review the district court's ruling on the admissibility of evidence for an abuse of discretion. See Pullen, 2016 OK CR 18¶ 10, 387 P.3d at 927. "An abuse of discretion has been defined as a conclusion or judgment that is clearly against the logic and effect of the facts presented." State v. Hooley, 2012 OK CR 3, ¶ 4, 269 P.3d 949, 950.

¶20 "An excited utterance must meet three foundational requirements: (1) a startling event or condition; (2) a statement relating to that startling event or condition; (3) made while the declarant is under the stress of excitement caused by the startling event or condition." Martinez v. State, 2016 OK CR 3, ¶ 50, 371 P.3d 1100, 1113. The Court in Martinez explained:

We examine both the timing of the statement and its spontaneity on a case-by-case basis. "Whether a statement qualifies as an excited utterance depends not on a fixed time but on the facts and circumstances." An excited utterance "need not be substantially contemporaneous with the startling event or condition ... so long as the declarant is under the stress of excitement at the time the statement is made."

Id. at ¶ 51 (citations omitted).

¶21 Thompson argues A.T.'s statements were too remote in time to qualify as excited utterances because the alleged crimes occurred during either the evening of January 8, 2015 or the morning of January 9, 2015, and A.T. spent the day of January 9th with Thompson without complaint during her phone call to her grandmother or to anyone else she encountered. A.T.'s failure to voice any complaints about her circumstances during the phone call to her grandmother or to anyone else is not dispositive as she was in the presence of, or under the control of, her attacker who had threatened her harm if she told anyone of the abuse. Once she was free from him, a visibly injured A.T. broke down and immediately described her ordeal to her grandmother. Her demeanor showed she was under the stress of excitement caused by the recent physical and sexual abuse. Based on this record, we find the district court did not abuse its discretion in admitting A.T.'s statements to her grandmother as an excited utterance. This claim is denied.

DECISION

¶22 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT 
OF PONTOTOC COUNTY

THE HONORABLE C. STEVEN KESSINGER, DISTRICT JUDGE

 
 
 APPEARANCES AT TRIAL
 APPEARANCES ON APPEAL
 
 
  
  
 
 
 RYAN RENNIE
 NANCY WALKER-JOHNSON
 
 
 ATTORNEY AT LAW
 APPELLATE DEFENSE
 
 
 118 N. CHICKASAW ST.
 COUNSEL
 
 
 PAULS VALLEY, OK 73075
 P.O. BOX 926
 
 
 COUNSEL FOR DEFENDANT
 NORMAN, OK 73070
 
 
  
 COUNSEL FOR APPELLANT
 
 
  
  
 
 
 TARA PORTILLO
 MIKE HUNTER
 
 
 ASST. DISTRICT ATTORNEY
 OKLAHOMA ATTORNEY
 
 
 105 WEST 13TH
 GENERAL
 
 
 ADA, OK 74820
 AMBER MASTERS
 
 
 COUNSEL FOR STATE
 ASSISTANT ATTORNEY
 
 
  
 GENERAL
 
 
  
 313 N.E. 21ST STREET
 
 
  
 OKLAHOMA CITY, OK 73105
 
 
  
 COUNSEL FOR APPELLEE
 
 

 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Concur
KUEHN, V.P.J.: Concur
LUMPKIN, J.: Concur in Result
HUDSON, J.: Concur

FOOTNOTES

[1] Thompson had a prior jury trial that ended in a mistrial on the basis of juror misconduct.

[2] Under 21 O.S.Supp.2014, § 13.1, Thompson must serve 85% of the sentence imposed on Counts 2, 3, and 4 before he is eligible for parole consideration.

[3] The exact nature of their relationship was unclear. Thompson said he picked up A.T. one night and ultimately paid her for sex. He estimated they had 25 to 30 dates.

[4] In Kelley v. State, Case No. F-2015-963 (unpublished)(July 13, 2017), this Court held a SANE nurse's testimony "recounting [the victim's] account of Appellant inserting the beer bottle into her vagina" was admissible under the medical treatment hearsay exception in 12 O.S.2011, § 2803(4) and the remainder of the SANE nurse's testimony was offered for impeachment rather than for the truth of the matter asserted. It does not appear the appellant in Kelley raised a confrontation challenge.

[5] The identity of the perpetrator is pertinent to diagnosis and treatment in deciding how to discharge the patient. Assessing patient safety and referring the victim for additional treatment or services is part of the overall exam. Patient safety is part of the comprehensive standard of care for treating victims of sexual assault. See Ward, 50 N.E.3d at 760-63.

[6] This is not to say that every statement made by an alleged sexual assault victim to a SANE nurse is non-testimonial. District courts must review the challenged statements in light of the "primary purpose" test and the factors cited above.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1992 OK CR 67, 839 P.2d 667, KENNEDY v. STATE
Discussed
 2009 OK CR 13, 206 P.3d 1020, HANSON v. STATE
Discussed at Length
 2012 OK CR 3, 269 P.3d 949, STATE v. HOOLEY
Discussed
 2016 OK CR 3, 371 P.3d 1100, MARTINEZ v. STATE
Discussed
 2016 OK CR 18, 387 P.3d 922, PULLEN v. STATE
Discussed at Length
 2018 OK CR 20, 423 P.3d 617, TRYON v. STATE
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2803, Hearsay Exceptions - Availability of Declarant Immaterial
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
 21 O.S. 425, Pattern of Criminal Offenses - Definition - Penalties - Jurisdiction and Venue
Cited
 21 O.S. 741, Kidnapping
Cited
 21 O.S. 646, Aggravated Assault and Battery Defined
Cited
 21 O.S. 888, 21 888, Forcible Sodomy
Cited
 21 O.S. 1114, Rape in First Degree - Second Degree
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA