STATE v. TANNEHILL
2024 OK CR 32
Case Number: S-2023-1045
Decided: 12/05/2024
THE STATE OF OKLAHOMA, Appellant v. MELIVN DEAN TANNEHILL, Appellee
Cite as: 2024 OK CR 32, __ __

 

 

SUMMARY OPINION

LUMPKIN, JUDGE:

¶1 Appellee, Melvin Dean Tannehill, was charged by Information in the District Court of Noble County, Case No. CF-2019-42, with the following: Count 1, Trafficking in Illegal Drugs, in violation of 63 O.S.Supp.2019, § 2-415

¶2 Appellee filed a motion to suppress, which the Honorable Nikki Leach granted at a hearing held December 14, 2023. Judge Leach found "I think this case is outside the realm of Lewis [State v. Lewis, 2021 OK CR 22498 P.3d 77922 O.S.Supp.2022, § 1053

¶3 In appeals brought to this Court pursuant to 22 O.S.Supp.2022, § 1053State v. Delso, 2013 OK CR 5298 P.3d 1192State v. Hooley, 2012 OK CR 3269 P.3d 949State v. Nelson, 2015 OK CR 10356 P.3d 1113

¶4 In Proposition I, Appellant argues the trial court abused its discretion in granting the motion to suppress based upon its finding that the police officer unlawfully detained Appellee after completing the traffic stop. Appellant maintains the traffic stop was over and Appellee was not detained when the officer engaged Appellee in a consensual encounter,

¶5 "When reviewing a trial court's ruling on a motion to suppress evidence based on a complaint of an illegal search and seizure, this Court defers to the trial court's findings of fact unless they are not supported by competent evidence and are therefore clearly erroneous. We review the trial court's legal conclusions based on those facts de novo." State v. Alba, 2015 OK CR 2341 P.3d 91

¶6 The Supreme Court holds that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject to a few specific exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). One of these exceptions is the automobile exception. See Carroll v. United States, 267 U.S. 132, 153-54 (1925) (establishing the "automobile exception" based on the mobility of the vehicle). In order for a traffic stop to be valid, both the stop itself and any inquiry following the stop must be reasonably related in scope to the justification for the stop. McGaughey v. State, 2001 OK CR 3337 P.3d 130Id.

¶7 However, what begins as a detention pursuant to a lawful traffic stop may become a consensual encounter after the traffic stop's completion if "a reasonable person under the circumstances would believe [he] was free to leave or disregard the officer's request for information." United States v. Mercado-Gracia, 989 F.3d 829, 836 (10th Cir. 2021) (internal quotations omitted).

¶8 The Tenth Circuit holds there are several factors to be considered when determining if an extended stop has become consensual. These include:

the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

Mercado-Gracia, 989 F.3d at 836. See also State v. Strawn, 2018 OK CR 2419 P.3d 249

¶9 The evidence adduced at the hearing showed Officer Sean Cordova initiated a lawful traffic stop of Appellee based upon the fact that he ran a stop sign and failed to signal a right turn. Appellee parked in the Perry Casino parking lot. Thereafter, Cordova made the usual request of Appellee to provide his identification and insurance information. When Appellee could not produce his insurance information, Cordova obtained passenger Zachary Jacks' license and contacted dispatch to determine if Appellee and Jacks had valid licenses and whether they had warrants. As he waited for this information, Cordova observed Appellee's movements. Learning that Jacks had a warrant, Cordova called for another officer to come to the scene. Thereafter, he had Appellee exit the vehicle and told him he would write him a warning ticket for the traffic violations. Appellee's actions were strange during this time, i.e., he flailed his arms, tucked them in his armpits, walked back and forth and sweated profusely. Cordova placed Jacks under arrest and put him in the other officer's patrol car.

¶10 Based upon Appellee's behavior, Cordova asked Appellee if he had taken any narcotics. He responded he had not. Cordova decided to administer field sobriety tests to Appellee. After advising Appellee of this, Cordova tried to commence the tests, but Appellee could not even stand with both his feet together. Appellee claimed he could not take the tests because he suffered a stroke sometime prior. Jacks saw Appellee try to take the sobriety tests before the other officer drove him away. At the time Jacks left the scene, he and Appellee had been stopped for about thirty to forty-five minutes.

¶11 Cordova, based upon his observations of Appellee's behavior, believed Appellee was intoxicated and it was unsafe for him to drive. He advised Appellee he was unsafe to drive and needed to get a ride from someone and was free to go. Appellee did not leave but instead sat on the curb to figure out how he was going to get a ride.

¶12 Applying the Mercado-Gracia analysis to the above evidence, once Cordova told Appellee he needed to get a ride and was free to leave, his further encounter about five minutes later with him became consensual. Cordova asked Appellee if he had anything illegal in his car. Appellant told him there shouldn't be, but he couldn't recall. Cordova then asked Appellee if he could search the car and Appellee refused. Within seven minutes, Officer Brandon Fram arrived with his drug sniffing dog. A canine sniff of a lawfully detained vehicle is not a search within the meaning of the Fourth Amendment. United States v. Hunnicutt, 135 F.3d 1345, 1350 (10th Cir. 1998).

¶13 The trial court's failure to consider that Cordova's questioning subsequent to the conclusion of the traffic stop was a consensual encounter was an abuse of discretion. This Court's finding of a consensual encounter resolves Appellee's challenge to the drug evidence in this case.

¶14 Trial judges must realize even though an encounter is initiated by a traffic stop, the time requirements of the traffic stop do not restrict an officer's ability to investigate based upon his or her observations. These may provide reasonable suspicion to take further action or may lead an officer to engage in a consensual encounter. Courts must look at the entire scope of evidence in making their decision rather than thinking a legal stopwatch controls the entire encounter.

DECISION

¶15 The decision of the District Court of Noble County granting Appellee's motion to suppress is REVERSED. The matter is REMANDED for further proceedings consistent with this Opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2024), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF NOBLE COUNTY
THE HONORABLE NIKKI LEACH, ASSOCIATE DISTRICT JUDGE

 

 
 
 
 APPEARANCES AT HEARING

 BRIAN T. HERMANSON
 DISTRICT ATTORNEY
 201 S. MAIN STREET
 NEWKIRK, OK 74647
 COUNSEL FOR THE STATE

 THOMAS GRIESEDIECK
 BOX 934
 OKLAHOMA CITY, OK 73101
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 BRIAN T. HERMANSON
 DISTRICT ATTORNEY
 FERA TERRELL
 ASS'T DISTRICT ATTORNEY
 201 S. MAIN STREET
 NEWKIRK, OK 74647
 COUNSEL FOR APPELLANT

 SCOTT W. BRADEN
 111 N. PETERS, #100
 NORMAN, OK 73069
 COUNSEL FOR APPELLEE
 
 
 

 

 

OPINION BY: LUMPKIN, J.
ROWLAND, P.J.: Specially Concur
MUSSEMAN, V.P.J.: Concur
LEWIS, J.: Concur
HUDSON, J.: Concur

FOOTNOTES

Lewis case did not involve a consensual encounter. Its outcome was based upon this Court's finding that the officer had reasonable suspicion that illegal activity was occurring which justified extending the traffic stop.

 

 

ROWLAND, PRESIDING JUDGE SPECIALLY CONCURRING:

¶1 I concur fully with the majority's analysis and conclusion that at the time of the drug dog's alert on Tannehill's vehicle he was no longer detained and was free to leave. In my view, Tannehill's admission in his brief, where he candidly concedes that he was free to leave once the officer told him he could not drive his vehicle and needed to call someone to come and pick him up, is dispositive. See Appellant's Brief at 4. The trial court, however, was mistakenly persuaded by Tannehill's claim that when the officer asked Tannehill a few minutes later if he was carrying anything illegal in his vehicle and asked for permission to search it, that somehow the detention was reinitiated. That is not the law.

¶2 It is settled as a matter of both federal and state law that asking questions during a consensual encounter does not transform it into a detention. Tannehill characterizes the officer's questioning as more akin to interrogation which caused him to become nervous and begin to sweat, but that does not amount to a seizure within the ambit of the Fourth Amendment.

Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," California v. Hodari D., 499 U.S. 621, 628 . . . (1991), the encounter is consensual and no reasonable suspicion is required.

Florida v. Bostick, 501 U.S. 429, 434 (1991). See also State v. Bass, 2013 OK CR 7300 P.3d 1193United States v. Little, 18 F.3d 1499, 1506 (10th Cir. 1994) (noting the asking of incriminating questions is irrelevant to the totality of the circumstances in determining whether the person was detained).

¶3 The exclusionary rule is a court-fashioned remedy to enforce the strictures of the Fourth Amendment and is to be employed only where the societal costs of suppressing evidence are outweighed by the interest in deterring police misconduct. Davis v. United States, 564 U.S. 229, 246 (2011) ("[T]he sole purpose of the exclusionary rule is to deter misconduct by law enforcement.") (emphasis in original). In this case the officer pulled over a vehicle and immediately saw "a lot of movement inside the vehicle'' which raised his suspicions based upon his training. He soon discovered that the passenger had an outstanding arrest warrant from a different county, so he started the process of arresting the passenger and informed Tannehill, the driver, he would receive a warning for running the stoplight.

¶4 Tannehill exhibited what the officer deemed uncontrolled movements such as arm flailing, walking back and forth, sweating profusely, and tucking his arms under his armpits. The officer attempted to perform standardized field sobriety tests, but Tannehill could not even stand still with both feet together. Tannehill cited a prior stroke as the reason he could not perform the tests.

¶5 Concerned with Tannehill's ability to drive, the officer informed him that he would not be allowed to drive the vehicle and would need to have someone come pick him up, so Tannehill sat on the curb and started trying to contact friends or relatives. While Tannehill was sitting there, the officer, whose suspicions had not been lessened by anything he heard or observed, asked Tannehill if Tannehill had anything illegal in the car and if he could look. When Tannehill refused consent, a drug sniffing dog was brought to the scene whereupon it alerted, and a subsequent search turned up a trafficking amount of methamphetamine.

¶6 At the time Tannehill was sitting on the curb, the officer's possible courses of action were: (1) to allow Tannehill to drive away in his vehicle despite signs of impairment; or (2) to stand quietly by while Tannehill attempted to get a ride ignoring the mounting evidence that something was amiss. The Fourth Amendment does not require the officer to do either of these things; his chosen course of action was entirely reasonable and "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Kentucky v. King, 563 U.S. 452, 459 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). Nothing in this chain of events amounts to police misconduct, and certainly nothing that should beget the serious remedy of suppressing the evidence. See, e.g., Hudson v. Michigan, 547 U.S. 586, 591 (2006) (suppressing criminal evidence exacts a high cost to society and should be a court's last resort, not its first impulse).