**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TRACEY RICHARD MOORE,

      Defendant - Appellant.

No. 14-6014

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:13-CR-00150-HE-1)**

---

Submitted on the briefs:[*]

Teresa Brown, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Sanford C. Coats, United States Attorney; Steven W. Creager, Special Assistant United States Attorney; Robert Don Gifford, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **TYMKOVICH** and **MORITZ**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

**BRISCOE**, Chief Judge.

_____

Defendant Tracey Richard Moore appeals the district court's denial of his motion to suppress evidence obtained during a search of his vehicle following a traffic stop. After Moore was pulled over for speeding and issued a warning, an Oklahoma Highway Patrol trooper continued to detain Moore in order to conduct a dog sniff. The dog alerted to Moore's vehicle and a subsequent search revealed a sawed-off shotgun and ammunition in the trunk. Moore moved to suppress all evidence discovered during the stop. After the district court denied Moore's motion, he pleaded guilty to being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). On appeal, Moore argues the district court erred in denying his motion to suppress because the trooper lacked reasonable suspicion to detain him after the purpose of the stop was met. He also argues his Fourth Amendment rights were violated when the narcotics-detection dog jumped into his vehicle. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

On April 8, 2013, Oklahoma Highway Patrol Trooper Matt Villines pulled Moore over for speeding. Moore was traveling 73 miles per hour in a 70 mile-per-hour zone, and was driving a gold Chrysler Sebring with California license plates.

Trooper Villines approached Moore's vehicle and asked Moore to step out of the car. Trooper Villines also asked Moore for his driver's license and insurance documents. Moore met Trooper Villines in front of his patrol car and gave Trooper Villines his

California driver's license and insurance documents. Trooper Villines noticed that Moore seemed nervous. His hands were shaking as he handed over his driver's license; he rarely made eye contact; he kept fidgeting; and he immediately asked if he could smoke a cigarette. Even after Trooper Villines told Moore that he would only be receiving a warning, Moore still appeared nervous.

Trooper Villines asked Moore to sit in his patrol car while he wrote up the warning; Moore complied. While in the patrol car, Trooper Villines asked Moore about the reason for his trip. Moore explained that he was moving from California to New York. As Trooper Villines was examining Moore's vehicle registration, Trooper Villines noticed that the vehicle Moore was driving was registered not only to Moore, but also to a female with a different last name. When Trooper Villines asked Moore about this, Moore said that he had known the female for several years and that his name had been added to the registration about a week ago. Throughout this conversation, Trooper Villines noticed that Moore still seemed nervous. Trooper Villines completed the warning ticket, returned all of Moore's documents to him, and told Moore to have a good day.

Before Moore got out of the patrol car, Trooper Villines asked Moore if he could speak to him for a little bit longer. Moore said yes, and Trooper Villines proceeded to ask Moore if he had ever been in any trouble before. Moore stated that he had but that he did not wish to talk about it. However, Moore added that Trooper Villines "could probably look it up easy enough." ROA, Vol. 3 at 14. Trooper Villines then asked Moore if he had anything illegal in his vehicle, such as weapons or drugs. Moore said no. Trooper

3

Villines next asked Moore for consent to search his vehicle. Moore refused. At that point, Trooper Villines informed Moore that he would be detaining him to conduct a dog sniff of his vehicle.

Approximately two and a half minutes after Moore refused to consent to the search of his vehicle, Oklahoma Highway Patrol Trooper Ryan Fike arrived with his certified narcotics-detection dog, Jester. As Trooper Fike and Jester were walking around the rear of Moore's vehicle, Jester alerted. Jester snapped his head around, returned to the front of Moore's vehicle, and jumped through the driver's side window, which Moore had left open. While walking over to the driver's side of the car, Trooper Fike noticed that Jester had his nose on the center console and that he was wagging his tail. Trooper Fike pulled Jester out of Moore's vehicle.

Trooper Villines and Trooper Fike then searched Moore's vehicle. They did not find any drugs during their search; however, they did discover a 12-gauge, double-barreled sawed-off shotgun and ammunition in the trunk. Trooper Villines ran a criminal history check on Moore and learned that Moore had a prior felony conviction, which prohibited him from possessing a firearm or ammunition. The troopers arrested Moore.

Moore was indicted on three counts: (1) one count for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1); (2) one count for knowingly transporting in interstate commerce a sawed-off shotgun, in violation of 18 U.S.C. § 922(a)(4); and (3) one count for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Moore moved to suppress all evidence obtained during the traffic stop. Moore argued that Trooper Villines lacked reasonable suspicion to detain him after the traffic stop was completed. He also argued that Jester's entry into his vehicle constituted a search by law enforcement that violated his Fourth Amendment rights. The district court denied the motion, finding that the traffic stop was justified at its inception, that Moore's nervousness and criminal history provided Trooper Villines with reasonable suspicion to detain Moore after the purpose of the traffic stop was completed, and that Jester's positive alert provided the troopers with probable cause to search Moore's vehicle.

Moore pleaded guilty to Count One of the indictment, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Moore to 24 months' imprisonment and three years' supervised release.

## II

Moore contends the district court erred in denying his motion to suppress evidence obtained during the traffic stop. He argues he was unlawfully detained by Trooper Villines without reasonable suspicion after the traffic stop had ended. He also argues Jester's entry into his vehicle constituted an unlawful search.

### A

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government," and "accept the district court's findings of fact unless clearly erroneous." United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004). However, we "review *de novo* the ultimate determination of reasonableness under the

5

Fourth Amendment." Id. (internal citation omitted).

B

A routine traffic stop is considered a seizure within the meaning of the Fourth Amendment, see United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1226 (10th Cir. 2008), and is analyzed "under the principles applicable to 'investigative detentions,'" United States v. Doyle, 129 F.3d 1372, 1375 (10th Cir. 1997). "[A] traffic stop is reasonable if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Karam, 496 F.3d 1157, 1161 (10th Cir. 2007) (internal quotation marks omitted). Here, Moore does not challenge the initial stop in which he was pulled over for speeding. Rather, he argues that Trooper Villines's decision to detain him in order to conduct a dog sniff of his vehicle unreasonably exceeded the scope of the initial stop and was unlawful.

An investigative detention must be temporary, "last[ing] no longer than is necessary to effectuate th[e] purpose" of the stop, which, in the case of a traffic stop, is "to address the traffic violation that warranted the stop" in the first place. Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015) (internal quotation marks omitted).[1] As part

---

[1] Following the Supreme Court's decision in Rodriguez v. United States, 135 S. Ct. 1609 (2015), we asked the parties to prepare supplemental briefing on whether Rodriguez impacted this case. After reviewing the parties' supplemental briefs, we agree that the Supreme Court's decision in Rodriguez does not alter our analysis in this case. There, the Supreme Court addressed Eighth Circuit precedent which held that a *de minimis* continued detention for the purpose of conducting a sniff by a narcotics-detection dog after the purpose for the stop was concluded did not violate the Fourth Amendment. The Supreme Court did not address the issue we face here, namely, whether the officer had

(continued...)

of a routine traffic stop, an officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001); see also Rodriguez, 135 S. Ct. at 1615. An officer may also generally inquire about the driver's travel plans, see United States v. Williams, 271 F.3d 1262, 1267 (10th Cir. 2001), and ask questions, whether or not related to the purpose of the stop, so long as they do not prolong the stop, see United States v. Simpson, 609 F.3d 1140, 1146 n.1 (10th Cir. 2010). But "[o]nce an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave." United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009).

Nonetheless, a traffic stop may be expanded beyond its initial purpose "if the traffic stop has become a consensual encounter," or "if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." Caro, 248 F.3d at 1244. Whether an investigative detention is supported by reasonable suspicion "does not depend upon any one factor, but on the totality of the circumstances." Simpson, 609 F.3d at 1146 (internal quotation marks omitted); see also United States v. Cortez, 449 U.S. 411, 417-18 (1981). For reasonable suspicion to exist, an officer must "articulate something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted).

---

[1](...continued)
reasonable suspicion to detain the defendant after the purpose of the stop was completed. Instead, the Court remanded the case so that a determination on that issue could be made. See id. at 1612.

7

Here, both parties agree that the purpose of the traffic stop—to issue Moore a warning for speeding—was completed as soon as Trooper Villines returned Moore's license, gave him a copy of the warning, and told him to have a good day. Once the tasks tied to the traffic stop were finished, Trooper Villines no longer had the authority to detain Moore absent consent or reasonable suspicion. Initially, Moore did consent to additional questioning after the completion of the stop. However, as soon as Moore denied Trooper Villines's request to search his vehicle, the encounter no longer remained consensual. At that point, Trooper Villines needed to have reasonable and articulable suspicion that criminal activity was occurring in order to detain Moore further and conduct a dog sniff.

On appeal, the government argues the following factors provided Trooper Villines with reasonable suspicion: (1) Moore's nervousness, (2) Moore's acknowledgment to Trooper Villines that he had a prior criminal history, and (3) Moore's name being recently added to the vehicle's registration.[2]

Whether Trooper Villines had reasonable suspicion based on these factors is a close question. We have "consistently held that . . . nervousness is not entitled to significant weight when determining whether reasonable suspicion exists." Courtney v.

---

[2] The third factor set forth by the government was not considered by the district court. However, the government urges us to consider it on appeal. We have previously considered factors beyond those relied upon by the district court. See United States v. Santos, 403 F.3d 1120, 1133-34 (considering the "nine factors invoked by the district court, plus an additional factor mentioned by the police officer"). Because our analysis depends on the totality of the circumstances, we will likewise consider this additional factor here.

8

Okla. ex rel. Dep't of Public Safety, 722 F.3d 1216, 1224 (10th Cir. 2013) (internal citation omitted); see also Williams, 271 F.3d at 1268. Because nervousness is a "common" and "natural" response "to [a] confrontation with the police," generally, it must be "accompanied by other, more probative, grounds" of suspicious activity in order for reasonable suspicion to exist. United States v. Santos, 403 F.3d 1120, 1127 (10th Cir. 2005). Nonetheless, we do afford "somewhat more weight" to "[e]xtreme and persistent nervousness." Simpson, 609 F.3d at 1148 (internal quotation marks omitted).

Here, Trooper Villines testified that throughout the encounter Moore appeared very nervous. Moore's hands were shaking when he handed over his license; he rarely made eye contact; he could not stop fidgeting; his heart was beating rapidly; he immediately asked if he could smoke a cigarette; and he remained anxious even after being told that he would only be receiving a warning. Based on these factors, the district court determined that Moore's "nervousness was greater in type . . . than is perhaps normal." ROA, Vol. 3 at 58. Under these circumstances, we conclude that the district court's finding was not clearly erroneous. The nervousness Moore displayed here "exceeded that of the average citizen during a routine traffic stop." Williams, 271 F.3d at 1269. Moore not only displayed palpable signs of nervousness throughout the encounter, but he also remained nervous even after being told that he would only be receiving a warning. See id.; Courtney, 722 F.3d at 1224 (noting that the trooper's observation that the defendant's "nervousness did not dissipate after he was informed he would only be receiving a warning for the traffic violation" was "consistent with extreme nervousness").

9

Given these facts, we will consider Moore's nervousness in our analysis and give it greater weight than we would a more commonplace display of nervousness.

The next factor set forth by the government and considered by the district court is Moore's prior criminal history. "[P]rior criminal history is by itself insufficient to create reasonable suspicion." Santos, 403 F.3d at 1132 (internal citation omitted). However, when viewed in conjunction with other factors that suggest criminal activity may be occurring, criminal history can be a powerful contributor to the reasonable suspicion analysis. Id.; see also United States v. White, 584 F.3d 935, 951 (10th Cir. 2009). This is especially true when, for example, a defendant lies about having a criminal history. See Santos, 403 F.3d at 1133-34.

In this case, when asked by Trooper Villines whether he had been in trouble before, Moore admitted that he had. Moore refused to provide any additional details, but did add that Trooper Villines could probably look it up easy enough. While Trooper Villines did not press Moore for additional information after Moore indicated he did not want to discuss his past, Trooper Villines did know at that time that Moore had a record. Thus, we will consider Moore's admission that he had a prior record as a part of the totality of the circumstances surrounding Moore's continued detention.

The final factor set forth by the government, although not considered by the district court, is the recent addition of Moore's name to the vehicle's registration. During the stop, Trooper Villines noticed that there was a female's name listed on the registration in addition to Moore's. When Trooper Villines asked Moore about this, Moore explained

10

that the vehicle was originally registered to a friend of his and that his name was only recently added to the registration. According to Trooper Villines, this fact raised suspicion because in his experience "sometimes people involved in criminal activity will have a vehicle registered to their name to make it look more legitimate for their trip." ROA, Vol. 3 at 11.

The recent registration of a vehicle can contribute to reasonable suspicion. See United States v. Berrelleza, 90 F. App'x 361, 364 (10th Cir. 2004) (unpublished) (noting in reasonable suspicion analysis "that it is common for drug cartels to supply a courier with a high mileage vehicle that has only recently been registered and insured"); see also United States v. Bravo, 306 F. App'x 436, 439 n.1, 441 (10th Cir. 2009) (unpublished). Although those cases that have relied on this factor have generally placed limited emphasis on it, viewing it as one factor among many suggesting criminal activity, it is nevertheless a relevant factor in determining whether reasonable suspicion exists. See Berrelleza, 90 F. App'x at 364; see also United States v. Bowman, 660 F.3d 338, 345 (8th Cir. 2011) (noting as one factor supporting reasonable suspicion that "the vehicle was newly registered"). Thus, we will consider this factor in our analysis.

Considering these factors in totality, we conclude that Trooper Villines's belief that criminal activity was afoot was reasonable. "Reasonable suspicion is not, and is not meant to be, an onerous standard." Simpson, 609 F.3d at 1153. Moore's nervousness, his admission that he had been in trouble before, and the recent addition of his name to the vehicle's registration, when considered together, are sufficient to indicate criminal

11

activity. Accordingly, Trooper Villines did not violate Moore's Fourth Amendment rights when he continued to detain Moore after the purpose of the stop was completed.

C

We next address whether Jester's entry into Moore's vehicle constituted a search without probable cause. It is well established that "[a] canine alert [provides] probable cause to search a vehicle." United States v. Williams, 403 F.3d 1203, 1207 (10th Cir. 2005). "This is so even when the dog alert occurs during a warrantless sniff on the exterior of a vehicle during a lawful traffic stop because such sniffs do not implicate the Fourth Amendment." United States v. Stewart, 473 F.3d 1265, 1270 (10th Cir. 2007) (internal quotations omitted). Once an officer has probable cause to search a vehicle, the officer is "empowered to search the entire vehicle, including the trunk." United States v. Chavez, 534 F.3d 1338, 1345 (10th Cir. 2008) (internal quotation marks omitted).

Moore contends that Jester's jumping into his car constituted an illegal search. He argues that because Jester did not properly alert before jumping into his vehicle and because Jester "was acting as a police officer when he was allowed to go inside [his] vehicle," the troopers searched his vehicle without probable case. Aplt. Br. at 15. This argument fails for several reasons.

First, Jester did properly alert before he jumped inside Moore's vehicle. Trooper Fike testified that when he was doing his first pass around the exterior of Moore's vehicle, Jester "gave a positive alert" with "a really good change of behavior" by snapping his head around before he jumped into the window of Moore's car. ROA, Vol.

12

3 at 36-37. The district court, finding Trooper Fike's testimony to be credible, held that Jester's change in behavior was a legitimate alert. This factual determination was not clearly erroneous. Thus, as soon as Jester alerted outside Moore's vehicle, the troopers had probable cause to search it.

Second, the fact that Jester gave an "alert" and not his trained "indication" does not change this result. See United States v. Parada, 577 F.3d 1275, 1282 (10th Cir. 2009). We have held that an alert, or a change in a dog's behavior in reaction to the odor of drugs, is sufficient to establish probable cause to search a vehicle, and that a final indication is not necessary. See id. ("[T]he general rule we have followed is that a dog's alert to the presence of contraband is sufficient to provide probable cause;" the "stricter rule . . . which would require the dog to give a final indication before probable cause is established" is not required.). Here, even though Jester did not provide his final indication by sitting and staring at the source of the odor, Jester's positive alert was, on its own, enough to provide the troopers with probable cause to search Moore's vehicle.

Third, Moore's contention that his case is akin to both Arizona v. Hicks, 480 U.S. 321 (1987), and Bond v. United States, 529 U.S. 334 (2000), where "police officers physically manipulated . . . evidence . . . to get probable cause to search," Aplt. Br. at 17, is misplaced. In Arizona, the police entered a home in response to gunfire. 480 U.S. at 323. Once inside, one of the officers noticed a couple of expensive stereo sets, which he thought might be stolen. Id. The officer wanted to record the equipment's serial numbers; however, to do so, he had to move some of the components. Id. The Supreme

13

Court held that the recording of the serial numbers that were in plain view did not constitute an unlawful seizure, but that the recording of those that required moving the equipment did. Id. at 326-28. Similarly, in Bond, the Supreme Court held that an officer's physical manipulation of a defendant's carry-on bag was a search and seizure that violated the defendant's Fourth Amendment rights. 529 U.S. at 339.

Moore's case is inapposite. Unlike in Arizona and Bond, the troopers in this case did not attempt to physically manipulate the evidence to obtain probable cause. Trooper Fike testified that the window Jester jumped through was already rolled down when he arrived. And nothing in the record suggests that either trooper touched the car or asked Moore to roll down his window before Jester jumped through it. Thus, the troopers did not physically manipulate Moore's vehicle in any way in order to establish probable cause.

Finally, even if we were to conclude that Jester did not sufficiently "alert" to establish probable cause until after he jumped into Moore's vehicle, Moore's Fourth Amendment rights would still not be violated. See United States v. Vasquez, 555 F.3d 923, 930 (10th Cir. 2009) (dog sniff of interior of vehicle lawful when "the dog's leap into the car was instinctual rather than orchestrated" and "the officers did not ask the driver to open the point of entry, such as a hatchback or window, used by the dog"); cf. United States v. Winningham, 140 F.3d 1328, 1330-31 (10th Cir. 1998) (dog sniff of the interior of a vehicle unlawful when the detention of the vehicle was not justified by reasonable suspicion and officers opened the hatchback where the dog entered vehicle).

14

Accordingly, the district court properly concluded that Troopers Villines and Fike had probable cause to search Moore's vehicle before Jester entered it.

III

Based on the foregoing analysis, we affirm the district court's denial of Moore's motion to suppress.