STATE v. MORGAN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE v. MORGAN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE v. MORGAN
2019 OK CR 26
452 P.3d 434
Case Number: S-2018-952
Decided: 10/17/2019
THE STATE OF OKLAHOMA, Appellant, v. JOHN GLENN MORGAN, Appellee.
Cite as: 2019 OK CR 26, 452 P.3d 434

 

 



O P I N I O N




ROWLAND, JUDGE:


¶1 The State of Oklahoma charged Appellee John Glenn Morgan by Misdemeanor Information in the District Court of Tulsa County, Case No. CM-2017-4166, with Possession of Controlled Drug (Count 1), in violation of 63 O.S.Supp.2017, § 2-402(A)(1), Unlawful Possession of Drug Paraphernalia (Count 2), in violation of 63 O.S.2011, § 2-405, and Unsafe Lane Change (Count 3), in violation of 47 O.S.Supp.2017, § 11-309. Morgan filed a motion to suppress all evidence seized from the warrantless search of his vehicle by the arresting officers during the traffic stop. After a hearing, the Honorable April Seibert, Special Judge, sustained Morgan's motion and dismissed Counts 1 and 2. The State announced its intent to appeal and timely filed the instant appeal of the district court's order, seeking review of four issues:

(1) whether the trial court failed to properly evaluate the durational requirements of the traffic stop;

(2) whether the trial court erred in failing to conclude that Morgan's consent to a search of his trailer altered the durational requirements of the stop;

(3) whether the trial court failed to recognize that the police were justified in holding Morgan beyond the initial traffic stop; and

(4) whether the trial court failed to recognize an independent source to hold Morgan.

¶2 We affirm the district court's order for the reasons discussed below.

BACKGROUND

¶3 On September 5, 2018, Owasso Police Officer Josua Goins was on patrol duty when he responded to a dispatch that a reckless driver of a semi-truck was northbound on Highway 169. Officer Goins located the semi-truck and observed it crossing the lane lines. Goins stopped the vehicle which was driven by John Glenn Morgan. During the course of the stop an officer from the canine unit walked a drug dog around the semi-truck. The dog alerted on the cab and a subsequent search revealed an eyeglass case in a bed rack that contained a substance that field tested positive for methamphetamine. A pipe was also found. Morgan was arrested.

¶4 Following a motion to suppress during which the trial judge heard evidence and watched video evidence of the entire encounter, the Court sustained the motion. Specifically, the Court held that once Goins had investigated the truck's swerving by speaking with the driver, administering field sobriety tests, and inspecting the inside of the trailer, further detention for the purpose of screening the vehicle with a drug dog was not supported by reasonable suspicion and therefore violated the Fourth Amendment.

DISCUSSION

¶5 The State challenges the district court's order granting Morgan's motion to suppress.[1] We exercise jurisdiction under 22 O.S.2011, § 1053(5)[2] because the State's ability to prosecute Morgan on the charges of unlawful possession of a controlled drug and unlawful possession of drug paraphernalia is substantially impaired absent the suppressed evidence, making review appropriate. See State v. Strawn, 2018 OK CR 2, ¶ 18, 419 P.3d 249, 253. In reviewing a district court's ruling on a motion to suppress evidence based on an allegation the search or seizure was illegal, we credit the district court's findings of fact unless they are clearly erroneous. State v. Alba, 2015 OK CR 2, ¶ 4, 341 P.3d 91, 92. "However, we review de novo the magistrate's legal conclusions drawn from those facts." State v. Nelson, 2015 OK CR 10, ¶ 11, 356 P.3d 1113, 1117.

PROPOSITION 1: THE TRIAL COURT FAILED TO PROPERLY EVALUATE THE DURATIONAL REQUIREMENT OF THE STOP.

¶6 Morgan had a right under both the United States and Oklahoma Constitutions to be free from unreasonable searches and seizures. U.S. Const. Amend. IV; Okla. Const. Article II, Section 30. It is well-established that a traffic stop is a seizure under the Fourth Amendment. Strawn, 2018 OK CR 2, ¶ 21, 419 P.3d at 253 (citing McGaughey v. State, 2001 OK CR 33, ¶ 24, 37 P.3d 130, 136). The scope and duration of a traffic stop must be related to the stop and must last no longer than is necessary to effectuate the purpose of the stop (i.e., investigate the potential traffic infraction). Seabolt v. State, 2006 OK CR 50, ¶ 6, 152 P.3d 235, 237 (citing Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). "If the length of the investigative detention goes beyond the time necessary to reasonably effectuate the reason for the stop, the Fourth Amendment requires reasonable suspicion that the person stopped has committed, is committing or is about to commit a crime." Seabolt, 2006 OK CR 50, ¶ 6, 152 P.3d at 237-38.

¶7 The United States Supreme Court has held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' - to address the traffic violation that warranted the stop and attend to related safety concerns." Rodriguez v. United States, 575 U.S. ___, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015) (internal citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are - or reasonably should have been - completed." Id. Given the many variable circumstances associated with traffic stops, this Court has been unwilling to impose rigid time limitations on the duration of traffic stops. See Seabolt, 2006 OK CR 50, ¶ 9, 152 P.3d at 238.

¶8 In determining whether the scope and duration of the traffic stop was related to the violation and lasted no longer than was necessary to investigate the traffic violation, the trial court considered both Officer Goins' testimony at the hearing and the lapel camera video recording of the stop. The video recording showed that Officer Goins stopped the semi-truck and made contact with Morgan at 6:21 p.m. He asked for, and received, Morgan's driver's license and proof of insurance. Officer Goins asked Morgan to step outside the vehicle and wait for him on the side of the road. By 6:23 p.m., Officer Goins was back in his patrol car. He requested a drug dog as well as a trooper to deal with the log book and size and weights because Morgan had admitted his log book was not properly filled out. When Officer Goins was finished with the computer check he waited in his patrol car for the backup officer to arrive. A backup officer arrived at 6:27 p.m. and he went with Officer Goins to the front of the semi-truck where Officer Goins administered sobriety tests on Morgan from 6:30 p.m. to 6:32 p.m. After this Officer Goins asked Morgan if he would open the back of the trailer and Morgan indicated he would do so. At 6:33 p.m., while they were walking to the back of the trailer, the backup officer told Goins that no troopers were available to come check the log book and Goins is heard to reply, "Hah, it's his lucky day." Morgan opened the trailer at 6:33 p.m. and Goins looked at the load. After the officers had examined the load and the back doors were closed, the canine unit officer, who had arrived earlier with the drug dog, brought it to the semi-truck and walked it around the vehicle. The dog alerted on the cab of the semi-truck at 6:38 p.m. This was seventeen minutes after the initial stop. Officer Goins had still not written a citation at this point.

¶9 Upon considering Officer Goins' testimony and especially the video of the lapel camera,[3] the trial court found that after Goins administered the sobriety tests and checked the load in the back of the trailer he should have expeditiously issued a citation or a warning and allowed Morgan to leave. Instead, Officer Goins told Morgan that he was being detained longer because of the issue with his log book. This clearly was not the case. Officer Goins was, as the trial court noted, offering an excuse to detain Morgan longer so a drug dog could be walked around the truck.[4] This case illustrates why simply using a stopwatch to time the length of detention in these cases is not dispositive. The seventeen minute detention prior to the dog alert may be reasonable in other cases, but here, at the point in time the dog handler commenced his work, there simply was not reasonable suspicion of drug activity to justify that continued detention. The district court found the situation similar to that in Seabolt where no circumstances existed to justify the extended detention. That ruling sustaining the motion to suppress is supported by the record and was not an abuse of discretion.

PROPOSITION 2: THE TRIAL COURT ERRED IN FAILING TO CONCLUDE THAT MORGAN'S CONSENT TO A SEARCH OF HIS TRAILER ALTERED THE DURATIONAL REQUIREMENTS OF THE STOP.

¶10 The record reflects that Officer Goins asked Morgan for consent to search the back of the trailer and that Morgan opened the trailer for the officers to inspect the load. The State complains that consent to search during a traffic stop gives the police more to investigate but with less time to do so. It asks this Court to expand the length of time the police have to conduct traffic stops where consent to search is given. The State also argues that the trial court erred in failing to account for the time necessary to conduct the search when assessing the duration of the traffic stop.

¶11 Again, given the many variable circumstances associated with traffic stops, we decline to impose rigid time limitations on the duration of traffic stops. See Seabolt, 2006 OK CR 50, ¶ 9, 152 P.3d at 238. In the present case, the time the officers spent inspecting the load did not count against the time deemed reasonable to effectuate the purpose of the stop; it was reasonable, under the circumstances of this case, for the officers to inspect the load to determine whether it may have contributed to the erratic driving. Rather, the trial court's ruling made clear that the unlawful detention is the time interval commencing after the sobriety tests had been administered and after the trailer had been inspected, in order to allow the drug dog to screen the vehicle. This proposition is without merit.

PROPOSITION 3: THE TRIAL COURT FAILED TO RECOGNIZE THAT OWASSO POLICE WERE JUSTIFIED IN HOLDING MORGAN BEYOND THE INITIAL TRAFFIC STOP.

¶12 If a traffic stop extends beyond the time necessary to effectuate the purpose of the stop, no Fourth Amendment violation will be found where the officer extended the stop because he or she had reasonable suspicion to believe that the person stopped committed, was committing, or was about to commit a crime. Seabolt, 2006 OK CR 50, ¶ 6, 152 P.3d at 237-38. It is the government's burden to prove the reasonableness of an officer's suspicion. United States v. Lopez, 849 F.3d 921, 925 (10th Cir. 2017) (citing United States v. Pettit, 785 F.3d 1374, 1379 (10th Cir. 2015). "[R]easonable suspicion is not, and is not meant to be, an onerous standard." Pettit, 785 F.3d at 1379 (10th Cir. 2015) (quoting United States v. Kitchell, 653 F.3d 1206, 1219 (10th Cir. 2011)). Individual acts that are susceptible to an innocent explanation can collectively amount to reasonable suspicion. See United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002). However, continued detention must be based on observed facts, not conclusions. United States v. Fernandez, 18 F.3d 874, 878, (10th Cir. 1994) ("continued detention . . . can only be justified if specific and articulable facts and rational inferences drawn from those facts [give] rise to a reasonable suspicion of criminal activity") (internal citation and quotation marks omitted). Furthermore, "inchoate and unparticularized suspicion or 'hunch' is insufficient to give rise to reasonable suspicion." Id. See also United States v. Simpson, 609 F.3d 1140, 1147-53 (10th Cir. 2010) (finding reasonable suspicion is determined by the totality of the circumstances).

¶13 The State argues that in the present case Morgan's behavior and the relevant circumstances exceed the quantum of specific and articulable facts necessary to justify extending the detention beyond the scope of the traffic stop. It specifically claims that Morgan's erratic driving and inability to maintain safe lane use, his failure to fill out his driving logs, and his nervousness provide specific and articulable facts necessary for further investigation beyond the scope of the traffic stop. We disagree.

¶14 Morgan's erratic driving and inability to maintain safe lane use were adequately investigated during the traffic stop by the officer's questioning, field sobriety tests, and the inspection of the load in the trailer. The tests did not indicate that Morgan was intoxicated and Morgan explained that irregular driving was caused by the light load he was hauling which was confirmed by visual inspection of the inside of the trailer. Thus, this information did not provide the requisite reasonable suspicion to extend the traffic stop past the time necessary to effectuate the purpose of the stop, specifically, the time required for the drug detector dog to screen the vehicle.

¶15 Nor did Morgan's failure to fill out his driving logs provide reasonable suspicion necessary to extend the stop in this case. While Officer Goins requested a trooper to investigate this violation, one was not available and Goins acknowledged that he was not detaining Morgan because of issues with the driver's log. At 6:29 p.m., Officer Goins can be heard outlining his plan of action to his backup officer, and in referring to his attempts to get a trooper to investigate the log book violations he says, "Oh well, if a trooper shows up a trooper shows up." Four minutes later upon being informed by his backup officer that no trooper is available, Officer Goins remarks "Hah, its his lucky day." Although an officer's subjective intent ordinarily plays no role in Fourth Amendment analysis, Dufries v. State, 2006 OK CR 13, ¶ 9, 133 P.3d 887, 889, allowing the investigation of the logbook to serve as the basis for continued detention here would authorize an indefinite detention because the officers knew no trooper would be coming.

¶16 Finally, while an officer may consider nervousness along with other circumstances in forming reasonable suspicion, it is not, generally, given significant weight in the reasonable suspicion analysis. See Seabolt, 2006 OK CR 50, ¶ 10, 152 P.3d at 238; Fernandez, 18 F.3d at 879 ("nervousness is of limited significance in determining reasonable suspicion"). See also United States v. Moore, 795 F.3d 1224, 1230 (10th Cir. 2015)("nervousness is not entitled to significant weight when determining whether reasonable suspicion exists") (quoting Courtney v. Okla. ex rel. Dep't of Public Safety, 722 F.3d 1216, 1224 (10th Cir. 2013)). "It is certainly not uncommon for most citizens --whether innocent or guilty--to exhibit signs of nervousness when confronted by a law enforcement officer." United States v. Wood, 106 F.3d 942, 948 (10th Cir. 1997). However, more weight is given to "extreme and persistent nervousness." Simpson, 609 F.3d at 1148; Paul v. State, 2003 OK CR 1, ¶ 3 n. 4, 62 P.3d 389, 390 n. 4.

¶17 Here, Officer Goins testified at the suppression hearing that when he made contact with Morgan he was "a little erratic." Goins testified that Morgan's body movements were "kind of all over the place" and he spoke with "sort of an excited nervousness." The lapel video of the stop, however, did not show Morgan to display extreme nervousness at all. Rather, he appeared quite calm during the video-taped portions of the stop. Morgan's slight nervousness does not provide significant weight in the reasonable suspicion analysis to justify detention exceeding the scope of the initial traffic stop.

¶18 The trial court did not abuse its discretion in failing to recognize that the officers were justified in holding Morgan beyond the initial traffic stop as the record did not support such a finding.

PROPOSITION 4: THE TRIAL COURT FAILED TO RECOGNIZE AN INDEPENDENT SOURCE TO HOLD MORGAN.

¶19 The State argues that even if the officers illegally extended the stop beyond the duration necessary to effectuate the purpose of the traffic stop, the evidence was admissible under the independent source doctrine because Morgan's failure to maintain his log book provided an independent reason to extend the stop. "[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." Utah v. Strieff, 579 U.S. __, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016) (citing Murray v. United States, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)). The State's argument is not well taken. The record makes clear that no troopers were available to come to the scene and that Officer Goins was not going to pursue the problems with the log book. The State has not shown that the contraband was or would inevitably have been acquired from a separate, independent source. In fact, the record indicates that the investigation of logbook violations was in all likelihood a moot issue twelve minutes into the detention, which was prior to the consensual search of the trailer and the drug dog sniff of the vehicle's exterior. We cannot find that the trial court abused its discretion in declining to find that the stop was lawfully extended and the drugs and paraphernalia admissible under the independent source doctrine.

DECISION

¶20 The ruling of the district court sustaining Morgan's Motion to Suppress is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2019), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE APRIL SEIBERT, SPECIAL JUDGE


 
 
 
 APPEARANCES IN 
 DISTRICT COURT
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 RANDALL YOUNG
 ASST. DISTRICT ATTORNEY
 TULSA COUNTY
 500 S. DENVER,
 SUITE 900
 TULSA, OK 74103
 ATTORNEY FOR STATE
 
 
 RANDALL YOUNG
 ASST. DISTRICT ATTORNEY
 TULSA COUNTY
 500 S. DENVER,
 SUITE 900
 TULSA, OK 74103
 ATTORNEY FOR STATE
 
 
 
 
 MATTHEW HALL
 ATTORNEY AT LAW
 2727 EAST 21ST STREET,
 SUITE 600
 TULSA, OK 74114
 ATTORNEY FOR DEFENDANT
 
  
 
 



OPINION BY: ROWLAND, J.
LEWIS, P.J.: Concur
KUEHN, V.P.J.: Concur
LUMPKIN, J.: Concur in Results
HUDSON, J.: Concur



FOOTNOTES


[1] Morgan did not file a brief responding to the State's claims.



[2] Under Section 1053(5), the State may appeal "[u]pon a pretrial order, decision, or judgment suppressing or excluding evidence where appellate review of the issue would be in the best interests of justice[.]"



[3] The trial court indicated its initial opinion about the legality of the detention had been changed by watching the video of the encounter.



[4] The trial court incorrectly noted that Officer Goins was waiting for the canine unit to arrive. The lapel camera showed that the canine unit had arrived while Goins was administering the sobriety tests. However, the canine officer did not begin his work until after the field sobriety tests had been administered, and the search of the trailer had failed to disclose evidence or a reason for the truck's erratic driving. Thus, Officer Goins extended the detention waiting for the canine officer to get the dog out of his car and bring it to the semi-truck after the other tasks had been completed.










 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2001 OK CR 33, 37 P.3d 130, 72 OBJ 3431, MCGAUGHEY v. STATE
Discussed
 2003 OK CR 1, 62 P.3d 389, STATE v. PAUL
Discussed
 2006 OK CR 13, 133 P.3d 887, DUFRIES v. STATE
Discussed
 2006 OK CR 50, 152 P.3d 235, SEABOLT v. STATE
Discussed at Length
 2015 OK CR 2, 341 P.3d 91, STATE v. ALBA
Discussed
 2015 OK CR 10, 356 P.3d 1113, STATE v. NELSON
Discussed
 2018 OK CR 2, 419 P.3d 249, STATE v. STRAWN
Discussed at Length
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1053, State or Municipality May Appeal in What Cases
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 11-309, Additional Rules for Driving on Roadways Laned for Traffic
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-405, Prohibited Acts E- Penalties
Cited
 63 O.S. 2-402, Prohibited Acts B - Penalties
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA