STATE v. LEWIS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE v. LEWIS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE v. LEWIS
2021 OK CR 22
Case Number: S-2020-580
Decided: 08/26/2021
THE STATE OF OKLAHOMA, Appellant v. EDMOND RICHARD LEWIS, Appellee.
Cite as: 2021 OK CR 22, __ __

 

 

S U M M A R Y O P I N I O N 

LUMPKIN, JUDGE:

¶1 Appellee Edmond Richard Lewis was charged with Trafficking in Illegal Drugs (Methamphetamine) (63 O.S.Supp.2018, § 2-415) (Count I) and Possession of a Firearm After Former Felony Conviction (21 O.S.Supp.2014, § 1283(A)) (Count II) in the District Court of Adair County, Case No. CF-2018-217. Approximately three (3) months after Preliminary Hearing, the defense filed a Motion to Suppress and Dismiss challenging the legality of the search and the admissibility of evidence seized as a result of the search. The defense also filed a Motion to Quash the Information and Bind-over challenging the sufficiency of the evidence presented at Preliminary Hearing to establish that a crime was committed and that there was reasonable cause to believe the defendant committed the charged crime. After a hearing where testimony and argument were heard, the Honorable Jeffrey Payton, District Judge, granted the defense motions and suppressed the evidence finding that all contraband seized in this case was inadmissible. The State subsequently announced its intent to appeal pursuant to 22 O.S.2011, § 1053(5). Since the District Court's order substantially impaired the State's ability to prosecute Appellee, we find that review is in the best interests of justice. State v. Morgan, 2019 OK CR 26, ¶ 5, 452 P.3d 434, 436. 

¶2 The State now raises the following propositions of error:

I. The trial court erred in sustaining the Defendant's Motion to Suppress on the grounds that the deputy unreasonably prolonged the length of the traffic stop to conduct a records check on the Appellee, a passenger of the motor vehicle, along with the remaining occupant.

II. The trial court erred in sustaining the Appellee's Motion to Suppress on the grounds that the deputy did not have sufficient reasonable suspicion to extend the length of the traffic stop to perform an open air sniff with his drug detection dog.

III. The trial court erred in sustaining the Appellee's Motion to Quash on the grounds that the magistrate lacked probable cause to show a crime was committed and probable cause to believe the Appellee committed the crime at preliminary hearing.

¶3 After thorough consideration of these propositions of error and the entire record before us on appeal including the original record, transcripts, and the State's brief,[1] we find the ruling of the District Court granting the Motion to Suppress and Dismiss as well as the Motion to Quash the Information and Bind-over should be reversed and the case remanded to the District Court for proceedings not inconsistent with this opinion.

¶4 The charges in this case stem from a traffic stop on November 22, 2018, on Candy Mink Springs Road, south of Stilwell. The legality of the stop itself has not been challenged. Deputy Girdner, Adair County Sheriff's deputy, testified at the motion hearing that he first observed a black truck at a residence behind the Cherry Tree Store. The residence belonged to Randy Bolin. This location caught the deputy's attention because he had assisted on a traffic stop earlier in the day where the driver, John Kirk, had just left Bolin's residence. During this traffic stop, Deputy Girdner learned that Bolin was selling methamphetamine out of his house. Deputies discovered drug paraphernalia and methamphetamine inside Kirk's vehicle as the result of a consented search.

¶5 Deputy Girdner testified that in his encounter with the black truck which ultimately held Appellee, he noticed the interior lights of the truck were on, as if someone was entering or exiting the truck. Girdner watched the truck pull out of the Bolin residence and the store parking lot for the main roadway. The driver not only failed to signal but the truck also had a non-functioning tail light. Deputy Girdner conducted a traffic stop on the truck about a mile down the road. Appellee was not the driver, but one of two passengers. The driver was Jason Armstrong, Appellee was the front seat passenger, and Brian Nakedhead was the backseat passenger. During the stop, Deputy Girdner learned that Armstrong's driver's license was valid, and that all three men had drug related criminal histories, although none had pending charges or outstanding warrants. Girdner asked the men where they were going. Armstrong advised the deputy they were going to "Sidebottom's house". Deputy Girdner was familiar with Paul Sidebottom who lived on Candy Mink Springs Road because he had participated in several search warrants at Sidebottom's home for controlled dangerous substances.

¶6 Deputy Girdner testified that Appellee in particular seemed very nervous based upon his incessant talking while the other two men remained fairly quiet. Appellee also tried to make personal connections with the deputy and the deputy's family. This was very different from Appellee's behavior a week earlier when Girdner had pulled him over on a traffic stop. The backseat passenger, Nakedhead, did not communicate with the deputy nor did he make eye contact. This caused Girdner concern that Nakedhead was concealing something. Girdner testified that Armstrong, the driver, appeared to be agitated.

¶7 Based upon the original location of the truck, Bolin's residence; the purported destination of the group, Sidebottom's residence; and Girdner's knowledge of the association of both residences with controlled dangerous substances, combined with the nervousness of Appellee and Nakedhead, and the drug related criminal histories of all three men, Deputy Girdner believed he had reasonable suspicion to extend the length of the traffic stop and use his K-9 partner, Quavik, to conduct an open air sniff of the truck. Deputy Girdner had Quavik with him at the time. Quavik alerted on the back driver's side of the truck. Deputy Girdner testified this alert gave him probable cause to search the truck. As a result of this search, several bags of methamphetamine, paraphernalia, and a gun were found. Notably, a Crown Royal bag was located under Appellee's seat -- the front passenger seat -- containing several bags of methamphetamine collectively weighing more than 20 grams. A .380 caliber semi-automatic handgun was found under Appellee's seat.

¶8 In Proposition I, the State argues the trial court erred in granting the motion to suppress. The State asserts that Deputy Girdner did not unreasonably prolong the length of the traffic stop by asking the dispatcher to conduct a records check on Appellee and the other passenger and relay any criminal history information. Appellee had argued to the District Court that while an officer may check the vehicle registration and driver's record, the criminal history of each passenger is not reasonably related to the purpose of the stop.

¶9 This Court reviews a trial court's ruling on a motion to suppress for an abuse of discretion. Taylor v. State, 2018 OK CR 6, ¶ 3, 419 P.3d 265, 267. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue or a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented. Id.

¶10 The State argues that Deputy Girdner's request for information on all three vehicle occupants was reasonably related to officer safety and was not unreasonably lengthy or burdensome. It has been recognized that "[t]raffic stops are especially fraught with danger to police officers, . . . so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." Rodriguez v. United States, 575 U.S. 348, 356 (2015) (internal quotation and citation omitted). "[W]hile a traffic stop is ongoing . . . an officer has wide discretion to take reasonable precautions to protect his safety . . . Obvious precautions include running a background check on the driver and removing the occupants from the vehicle." United States v. Rice, 483 F.3d 1079, 1084 (10th Cir. 2007) (internal citation omitted). "[B]ecause passengers present a risk to officer safety equal to the risk presented by the driver," an officer conducting a traffic stop "may ask for identification from passengers and run background checks on them as well." Id. (citing Maryland v. Wilson, 519 U.S. 408, 413-14 (1997)).

¶11 Per Deputy Girdner's testimony, approximately eight minutes elapsed from his initial encounter with Appellee's vehicle until he received a return of information from his dispatcher. Girdner testified that the amount of time spent on a traffic stop could vary depending on the skill of the dispatcher, but he was in communication with a veteran dispatcher that evening and the length of the traffic stop was normal compared to other traffic stops. The record indicates Girdner asked for information on all three occupants of the vehicle at about the same time. There is nothing in this record showing that Deputy Girdner's request for information on all three occupants was unreasonable or that his inquiries unduly lengthened the traffic stop. The trial court's ruling to the contrary was an abuse of discretion as it was clearly against the proper consideration of the relevant facts and law. Proposition I is granted.

¶12 In Proposition II, the State contends the trial court erred in granting the motion to suppress on the grounds that Deputy Girdner did not have sufficient reasonable suspicion to extend the length of the traffic stop to perform an open air sniff with his drug detection dog. The State argues that Deputy Girdner had reasonable suspicion to legally extend the traffic stop based upon the criminal histories of all three occupants, the nervous behavior of at least two of the occupants, and the "high crime/notorious drug-related activity" of the locations from which Appellee's vehicle was leaving and where the vehicle was headed.

¶13 Appellee has a right under both the United States and Oklahoma Constitutions to be free from unreasonable searches and seizures. Morgan, 2019 OK CR 26, ¶ 6, 452 P.3d at 436 (citing U.S. Const. amend. IV; Okla. Const. art. II, § 30). "It is well-established that a traffic stop is a seizure under the Fourth Amendment." Id. "The scope and duration of a traffic stop must be related to the stop and must last no longer than is necessary to effectuate the purpose of the stop (i.e., investigate the potential traffic infraction)." Id. "If the length of the investigative detention goes beyond the time necessary to reasonably effectuate the reason for the stop, the Fourth Amendment requires reasonable suspicion that the person stopped has committed, is committing or is about to commit a crime." Id., 2019 OK CR 26, ¶ 6, 452 P.3d at 436-437 (internal quotation and citations omitted). The burden to prove the reasonableness of the officer's suspicion falls on the government. Id., 2019 OK CR 26, ¶ 12, 452 P.3d at 438.

¶14 The reasonable suspicion standard is not meant to be an onerous standard. Id. See also United States v. Kitchell, 653 F.3d 1206, 1219 (10th Cir. 2011). When determining whether the State has met its burden under this standard, "we judge the officer's conduct in light of common sense and ordinary human experience, and we accord deference to an officer's ability to distinguish between innocent and suspicious actions." Kitchell, 653 F.3d at 1219 (internal quotation omitted).

¶15 "Individual acts that are susceptible to an innocent explanation can collectively amount to reasonable suspicion . . . However, continued detention must be based on observed facts, not conclusions." Morgan, 2019 OK CR 26, ¶ 12, 452 P.3d at 438 (internal citations omitted). Prior criminal history can be a "powerful contributor" to an officer's reasonable suspicion determination when viewed in conjunction with other relevant factors. United States v. Moore, 795 F.3d 1224, 1230 (10th Cir. 2015). However, criminal history alone cannot create reasonable suspicion to prolong a traffic stop. Id. In conjunction with other factors, criminal history is one factor that can justify further detention and "cast a suspicious light on other seemingly innocent behavior". United States v. Davis, 636 F.3d 1281, 1291 (10th Cir. 2011) (internal quotation omitted).

¶16 Here, Deputy Girdner encountered three people with drug related criminal histories. This is the sort of information that would lend credence to Girdner's suspicion that Appellee and the other occupants were involved with drug trafficking. See United States v. White, 584 F.3d 935, 951 (10th Cir. 2009). While not sufficient in itself to create reasonable suspicion, the prior criminal history factor in this case can be considered in the reasonable suspicion determination.

¶17 Nervousness in general is not given much weight in a reasonable suspicion analysis because it is a common and natural response to a traffic stop or confrontation with the police. Moore, 795 F.3d at 1230; Morgan, 2019 OK CR 26, ¶ 16, 452 P.3d at 439. "[G]enerally, it must be 'accompanied by other, more probative, grounds' of suspicious activity in order for reasonable suspicion to exist." Moore, 795 F.3d at 1230. "[M]ore weight is given to 'extreme and persistent nervousness.'" Morgan, 2019 OK CR 26, ¶ 16, 452 P.3d at 439.

¶18 Nervousness can take many forms. Appellee talked constantly during the stop, which contrasted with his behavior in an earlier traffic stop with Deputy Girdner. Nakedhead was silent and did not make eye contact with the deputy. These behaviors by themselves are not sufficient to support a finding of reasonable suspicion, but can be considered with other factors in making the reasonable suspicion determination.

¶19 Along with additional supporting factors, an individual's presence in a high crime area can support a finding of reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124 (2000). "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Id. Here, Appellee and the other occupants of the truck were traveling between the residences of two known drug dealers. Like the other factors considered here, this is not sufficient in itself to support a finding of reasonable suspicion but when viewed with the other factors, it can play a part in a reasonable suspicion analysis.

¶20 Considering the above factors together, the State has met its burden of proving the deputy had reasonable suspicion to prolong the traffic stop based on the deputy's objective observations during the stop: Appellee's travel from one notorious drug-related destination to another, the prior criminal drug-related histories of all three occupants of the vehicle and the nervousness of at least two of the three occupants. Under the totality of the circumstances test, these facts justify "a particularized and objective basis for suspecting legal wrongdoing." Kitchell, 653 F.3d at 1218 (internal quotation omitted). As the evidence was sufficient to support a finding of reasonable suspicion that the occupants were engaged in drug trafficking, we find no Fourth Amendment violation in Deputy Girdner's continued detention of Appellee to allow for the open air sniff by the drug detection dog. The trial court's granting of the motion to suppress was an abuse of discretion as it was clearly against the proper consideration of the relevant facts and law. Proposition II is granted and the trial court's ruling granting the motion to suppress is reversed.

¶21 In Proposition III, the State argues the trial court erred in sustaining the Motion to Quash on the grounds of insufficient evidence. The State asserts the evidence showed that Appellee had constructive possession and knowledge of the trafficking amount of methamphetamine and firearm located underneath his seat. The trial court did not explicitly rule on this issue therefore, it is not necessary for us to address the claim at this point. The record shows the trial court granted the motion to quash, but only because it found the search was illegal, and not on any independent substantive grounds like dominion and control. Appellee's dominion and control over the methamphetamine and gun is an issue to be raised in subsequent proceedings before the trial court.

DECISION

¶22 The ruling of the District Court granting the Motion to Suppress and Dismiss and the Motion to Quash the Information and Bind-over is REVERSED and the case is REMANDED to the District Court for proceedings not inconsistent with this opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2021), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF ADAIR COUNTY
THE HONORABLE JEFFREY PAYTON, DISTRICT JUDGE

 
 
 
 APPEARANCES IN DISTRICT COURT

 JACK THORP
 DISTRICT ATTORNEY
 VALERIA G. LUSTER
 ASST. DISTRICT ATTORNEY
 220 W. DIVISION ST.
 STILLWELL, OK 74960
 COUNSEL FOR THE STATE

 RYAN S. FERGUSON
 533 W. BROADWAY ST.
 MUSKOGEE, OK 74401
 COUNSEL FOR THE DEFENSE
 
 
 APPEARANCES ON APPEAL

 JACK THORP
 DISTRICT ATTORNEY
 VALERIA G. LUSTER
 ASST. DISTRICT ATTORNEY
 220 W. DIVISION ST.
 STILWELL, OK 74960
 COUNSEL FOR APPELLANT

 NO RESPONSE FILED
 
 
 

 

OPINION BY: LUMPKIN, J. 
ROWLAND, P.J..: Concur in Results
HUDSON, V.P.J.: Concur
LEWIS, J.: Concur

FOOTNOTES

[1] Appellee did not file a response brief and we have not received a request for an extension of time in which to file a response brief. Because counsel for Appellee fully developed his arguments in the court below, we can now decide the case without a response brief.

 

 

ROWLAND, PRESIDING JUDGE: CONCURRING IN RESULTS

¶1 I agree with reversing the district court's rulings and remanding this case for further prosecution, but I disagree with the Court's legal analysis in Proposition II. Specifically, I take issue with the majority's reasonable suspicion analysis to justify extending this traffic stop. Too much emphasis is placed on certain factors, and little to none on other more probative ones.

A. Nervousness as a Basis for Reasonable Suspicion

¶2 First, while nervousness may certainly play a role in establishing reasonable suspicion, I do not find the evidence in this case that Lewis and his companions were nervous to be very persuasive. Most people being detained by police will be nervous to one degree or another, and therefore reasonable suspicion to extend a detention is generally based upon "extreme and persistent nervousness" or the like. State v. Morgan, 2019 OK CR 26, ¶ 16, 452 P.3d 434, 439. In Morgan, this Court held that where the suspect spoke with "sort of an excited nervousness," and his body movements were "kind of all over the place," the evidence of nervousness was too slight to weigh significantly in the reasonable suspicion analysis. Id. 2019 OK CR 26, ¶ 17, 452 P.3d at 439. See also Seabolt v. State, 2006 OK CR 50, ¶ 11, 152 P.3d 235, 238-39 (holding officer lacked reasonable suspicion to prolong traffic stop simply because the driver was nervous and fidgety and his car had been seen earlier at a house suspected of drug activity). On the other hand, reasonable suspicion has been found where the suspect's behavior was "extremely nervous," "well outside the norm," and his carotid artery was visibly pulsing in his neck during the encounter. State v. Strawn, 2018 OK CR 2, ¶¶ 7-8, 419 P.3d 249, 252. See also United States v. Davis, 636 F.3d 1281, 1292 (10th Cir. 2011) (holding trooper's testimony of abnormal nervousness--that suspect "was about to jump out of his pants, he was so nervous," and "was so nervous that he was just shaking so bad, he was really, really nervous"--supported a finding of reasonable suspicion).

¶3 These may seem like subtle distinctions, but we must keep in mind the constitutional importance of distinguishing behaviors that are normal and unremarkable from those which justify police detention of a citizen. The officer in this case noted that Lewis was more talkative than he had been in a previous encounter, and seemed to be trying to make small talk. The State also placed significance, as does the majority to some degree, that one of the other passengers was not talking enough and was largely silent. Whatever weight talking too much or too little merits in a reasonable suspicion analysis, this officer observed that Lewis's behavior was markedly different from their previous encounter, and thus I would give some weight to Lewis's apparent nervousness even though it does not appear to rise to the level of extreme or persistent.

B. High Crime Area Pursuant to Illinois v Wardlow

¶4 I also disagree with the majority's characterization of the area in question as a "high crime area" and its reliance upon Illinois v. Wardlow, 528 U.S. 119 (2000). In Wardlow, the Supreme Court held that unprovoked flight in a high crime area, with no other information, may justify pursuing and detaining a fleeing suspect. Id. at 125. In that case, police officers traveled in a caravan to a specific Chicago neighborhood known for illegal drug sales. The defendant, upon seeing officers converging on the scene, fled and police gave chase ultimately detaining him based solely upon his running away.

¶5 We have no flight here, unprovoked or otherwise, and characterizing the path between the residences of two known drug dealers as a high crime area expands the reach of Wardlow beyond its intent. I am also concerned that it might lead officers to believe they may stop and detain any person they know to have prior drug convictions, anytime they observe him or her coming to or from a known drug house. I do not think the Fourth Amendment grants any such continuing authority to stop such persons at will; rather, the focus should be on reasonable suspicion that criminal activity is afoot at that moment.

C. Factors Rejected or Not Considered by the District Court

¶6 The record in this case shows that the residence from which Lewis and his companions were leaving was not just suspected of drug activity, but in fact officers had arrested a man who had bought methamphetamine at that very house earlier that same day. This is entitled to greater weight than evidence that at some undetermined point in the past some nondescript drug activity occurred there, but the district court expressly rejected it. During the suppression hearing, the court sustained an objection to evidence of this previous stop and arrest, finding it was hearsay and had nothing to do with the stop of the vehicle in which Lewis was a passenger. This was error and an abuse of discretion. Hearsay is admissible at suppression hearings. United States v. Matlock, 415 U.S. 164, 175 (1974); United States v. Sanchez, 555 F.3d 910, 922 (10th Cir. 2009).

¶7 The arresting officer also testified at preliminary hearing that when he initiated the instant traffic stop, the truck "didn't stop for quite a ways and . . . traveled probably approximately another half mile before they came to a stop." This should have been considered by the district court, as well as the majority, in weighing the presence of reasonable suspicion. See, e.g., United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998) (finding defendant's failure to stop promptly, inter alia, provided reasonable suspicion of illegal activity and supported his further detention and questioning); United States v. Fernandez, 18 F.3d 874, 878-79 (10th Cir. 1994) (recognizing that "a defendant's . . . failure to pull over promptly in response to a trooper's flashing lights [can be] an objective indication of something more serious than a minor traffic infraction.").

¶8 I would hold that the prior drug convictions of Lewis and his companions, their presence at a house officers had probable cause to believe was distributing methamphetamine that day, their admission of being en route to the house of another suspected drug dealer, the failure of the vehicle to immediately stop when signaled by the officer, and the above described evidence of nervousness on the part of Lewis, provided reasonable suspicion to extend the traffic stop in order to deploy the drug dog.

¶9 For these reasons, I concur in results.

 

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2006 OK CR 50, 152 P.3d 235, SEABOLT v. STATE
Discussed
 2018 OK CR 2, 419 P.3d 249, STATE v. STRAWN
Discussed
 2018 OK CR 6, 419 P.3d 265, TAYLOR v. STATE
Discussed
 2019 OK CR 26, 452 P.3d 434, STATE v. MORGAN
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1283, Convicted Felons and Delinquents
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1053, State or Municipality May Appeal in What Cases
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-415, Applicability of Act - Unlawful Acts - Violations - Penalties
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA